# FILED

JUN 0 6 2025

Heidi D. Campbell, Clerk
U.S. DISTRICT COURT

**2 5** CV - 2 8 6 CVE - MTS

**PARTIES for Habeas Corpus for G.L.Stephens**

0)  *Plaintiff:* **Linh Tran Stephens**, sui juris
Rural Free Delivery, Non-Domestic 00000,
℅ 1964 Ashley River Rd Ste B Unit 80112,
Charleston, South Carolina [zip exempt,near 29407] without U.S. Washington, D.C.
Phone: 817-631-3223 (donotcall.gov)

*Defendants*:

0)  **STATE OF OKLAHOMA and its divisions and employees/successors;**
1)  **OKLAHOMA DEPARTMENT OF HUMAN SERVICES** (**OKDHS**) **and its divisions and its employees/successors**;
2)  Bridget O'brien a/k/a **BRIDGET O'BRIEN** or BRIDGET KAY MENSER, in her individual capacity and in official capacity as OKDHS caseworker.
3)  April Seibert a/k/a **APRIL SEIBERT**, in her individual capacity and in official capacity as Special Judge of Tulsa County District Court, Docket C;
4)  Rodney Sparkman a/k/a **RODNEY SPARKMAN**, in his individual capacity and in official capacity as Special Judge of Tulsa County District Court, Docket C;
5)  Todd Chesbro a/k/a **TODD CHESBRO**, in his individual capacity and in official capacity as Special Judge of Tulsa County District Court, Docket C;
6)  Jeffrey Cartmell, a/k/a **JEFFREY CARTMELL** in his individual capacity and in official capacity as DIRECTOR OF OKDHS since 2024 replacing DEBORAH SHROPSHIRE
7)  Gentner Drummond, a/k/a **GENTNER FREDERICK DRUMMOND** in his individual capacity and in official capacity as OKLAHOMA ATTORNEY GENERAL since 2023;
8)  John Kevin Stitt, a/k/a, **J. KEVIN STITT**, in his individual capacity and in official capacity as GOVERNOR OF OKLAHOMA;
9)  **OKLAHOMA CHILD PROTECTIVE SERVICES** (**CPS**);
10) **OKLAHOMA CHILD SUPPORT SERVICES** (**CSS**)
11) **TULSA COUNTY DISTRICT COURT and its divisions** (Family Court, Juvenile Court, Civil Court, Small Claim Court Division) **and its employees/successors**
12) **OKLAHOMA ATTORNEY GENERAL OFFICE** (**OAG**);
13) **OKLAHOMA SECRETARY OF STATE (SOS)**;
14) **OKLAHOMA STATE GOVERNOR'S OFFICE**;
15) **ADAM SYLVESTER STEPHENS**, ex-husband of Linh Tran Stephen whose divorce was finalized in State of Oregon January 08, 2016
16) **DOES #1-99** known but unidentified STATE OF OKLAHOMA's employees,

- *Defendants # 1, 8, 13, and all defendants except # 16 :*
Oklahoma Attorney General Gentner Drummond for STATE OF OKLAHOMA and all its employees/ successors
313 NE 21st Street
Oklahoma City, OK 73105
- *Defendants # 2, 3, 7, 10, 11, 17*
**Oklahoma Department of Human Services and its divisions CPS and CSS**, Director Jerrey Cartmell and Deborah Shropshire, Bridget O'brien, 2400 N. Lincoln Blvd.
Oklahoma City, OK 73105
- **D***efendant # 11*
Child Support Services (CSS)
PO Box 248822
Oklahoma City, OK 73124
- *Defendant # 12, 4, 5, 6*
**Tulsa County District Court and all its divisions**:
ATTN: Clerk's Office, Presiding Judge, and Board of County Commissioners, Judges of docket C April Seibert, Rodney Sparkman, Todd Chesbro,
500 S. Denver Avenue
Tulsa, OK 74103
- *Defendant # 14*
Service of Process Division, **Oklahoma Secretary of State**
2300 N Lincoln Blvd, Suite 101
Oklahoma City, OK 73105-4897
- *Defendant # 9, 15*
Office of the Governor, ATTN: J. Kevin Stitt
Oklahoma State Capitol
2300 N. Lincoln Blvd., Suite 212
Oklahoma City, OK 73105
- *Defendant # 16*
Adam Sylvester Stephens (return address to ADA advocate Carol who serviced Adam)
7508 Ross Rd, Apt 5303, Del Valle, TX 78617
- CC:**The Board of County Commissioners**
Tulsa County Headquarters
218 W. 6th St., Tulsa, OK 74119-1004



Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 (OKND 2241 Mod 07-2019)

# UNITED STATES DISTRICT COURT

### for the
### Northern District of Oklahoma

| | |
|---|---|
| Linh Tran Stephens, sui juris, a woman breathing with a living soul and the Holy Spirit, owner of biological offspring G.L.Stephens | ) ) ) ) |
| *Petitioner* | ) |
| v. | ) Case No. _____ |
| STATE OF OKLAHOMA, OKLAHOMA DEPARTMENT OF HUMAN SERVICES, BRIDGET O'BRIEN, APRIL SEIBERT, ET. AL. | ) *(Supplied by Clerk of Court)* ) ) ) |
| *Respondent* | ) |
| *(name of warden or authorized person having custody of petitioner)* | ) |

## PETITION FOR A WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241

### Personal Information

1.  (a) Your full name:   Linh Tran Stephens, on behalf of my biological female offspring G.L.Stephens
    (b) Other names you have used: _____
2.  Place of confinement:
    (a) Name of institution:   OKDHS and ADAM SYLVESTER STEPHENS
    (b) Address:   Unsure _____

    (c) Your identification number: _____
3.  Are you currently being held on orders by:
    ☐ Federal authorities     ☒ State authorities     ☐ Other - explain:

4.  Are you currently:
    ☐ A pretrial detainee (waiting for trial on criminal charges)
    ☐ Serving a sentence (incarceration, parole, probation, etc.) after having been convicted of a crime
        If you are currently serving a sentence, provide:
        (a) Name and location of court that sentenced you: _____

        (b) Docket number of criminal case: _____
        (c) Date of sentencing: _____
    ☐ Being held on an immigration charge
    ☒ Other *(explain)*:   Petitioner is owner of biological property female offspring seeking habeas relief of
    her female offspring G.L.Stephens who was and stil is unlawfully restrained under void custody-modification
    orders entered without jurisdiction in Oklahoma state court

### Decision or Action You Are Challenging

5.  What are you challenging in this petition:
    ☐ How your sentence is being carried out, calculated, or credited by prison or parole authorities (for example, revocation or calculation of good time credits)

Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 (OKND 2241 Mod 07-2019)

☐ Pretrial detention
☐ Immigration detention
☐ Detainer
☐ The validity of your conviction or sentence as imposed (for example, sentence beyond the statutory maximum or improperly calculated under the sentencing guidelines)
☐ Disciplinary proceedings
☒ Other *(explain):* all orders entered by Tulsa County District Court and all of its divisions since DEC 03, 2021

6.    Provide more information about the decision or action you are challenging:
  (a) Name and location of the agency or court:    TULSA COUNTY COURT, OKDHS, CPS, CSS, OAH

  (b) Docket number, case number, or opinion number:    FD-2015-2228, JD-2021-270
  (c) Decision or action you are challenging *(for disciplinary proceedings, specify the penalties imposed)*:
  all of the decisions since DEC 03, 2021

  (d) Date of the decision or action:    02/07/2024, 02/20/2024 and 05/02/2025, and all orders since 12/03/2021

### Your Earlier Challenges of the Decision or Action

7.    **First appeal**
  Did you appeal the decision, file a grievance, or seek an administrative remedy?
  ☒ Yes        ☐ No
  (a) If "Yes," provide:
      (1) Name of the authority, agency, or court:   APPEAL BOARD OF OKDHS, STATE DISTRICT COURT OF TULSA COUNTY
      (2) Date of filing:  see attached (too many)
      (3) Docket number, case number, or opinion number:    see attached (too many)
      (4) Result:   denied
      (5) Date of result:  see attached (too many)
      (6) Issues raised:  see attached (too many)

  (b) If you answered "No," explain why you did not appeal:

8.    **Second appeal**
  After the first appeal, did you file a second appeal to a higher authority, agency, or court?
  ☒ Yes        ☐ No

(a) If "Yes," provide:

   (1) Name of the authority, agency, or court:    COURT OF CIVIL APPEAL, OKLAHOMA SUPREME COURT

   (2) Date of filing:   see attached (too many)

   (3) Docket number, case number, or opinion number:   see attached (too many)

   (4) Result:   denied

   (5) Date of result:   see attached (too many)

   (6) Issues raised:   see attached (too many)

(b) If you answered "No," explain why you did not file a second appeal:

9.   **Third appeal**

After the second appeal, did you file a third appeal to a higher authority, agency, or court?

☒ Yes          ☐ No

(a) If "Yes," provide:

   (1) Name of the authority, agency, or court:    UNITED STATES SUPREME COURT

   (2) Date of filing:   07/2024 and 05/2025

   (3) Docket number, case number, or opinion number:

   (4) Result:    "missed the deadline"

   (5) Date of result:   05/05/2025

   (6) Issues raised:   see Exhibits in filing, also see attached

(b) If you answered "No," explain why you did not file a third appeal:

10.   **Motion under 28 U.S.C. § 2255**

In this petition, are you challenging the validity of your conviction or sentence as imposed?

☐ Yes          ☐ No

If "Yes," answer the following:

(a)   Have you already filed a motion under 28 U.S.C. § 2255 that challenged this conviction or sentence?

   ☐ Yes          ☐ No

Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 (OKND 2241 Mod 07-2019)

If "Yes," provide:

(1) Name of court: _____

(2) Case number: _____

(3) Date of filing: _____

(4) Result: _____

(5) Date of result: _____

(6) Issues raised: _____

_____

_____

_____

_____

(b)    Have you ever filed a motion in a United States Court of Appeals under 28 U.S.C. § 2244(b)(3)(A), seeking permission to file a second or successive Section 2255 motion to challenge this conviction or sentence?

☐ Yes          ☐ No

If "Yes," provide:

(1) Name of court: _____

(2) Case number: _____

(3) Date of filing: _____

(4) Result: _____

(5) Date of result: _____

(6) Issues raised: _____

_____

_____

_____

_____

(c)    Explain why the remedy under 28 U.S.C. § 2255 is inadequate or ineffective to challenge your conviction or sentence: _____

_____

_____

_____

_____

_____

11.    **Appeals of immigration proceedings**

Does this case concern immigration proceedings?

☐ Yes          ☒ No

If "Yes," provide:

(a)    Date you were taken into immigration custody: _____

(b)    Date of the removal or reinstatement order: _____

(c)    Did you file an appeal with the Board of Immigration Appeals?

☐ Yes          ☐ No

Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 (OKND 2241 Mod 07-2019)

If "Yes," provide:

(1) Date of filing: _____

(2) Case number: _____

(3) Result: _____

(4) Date of result: _____

(5) Issues raised: _____

_____

_____

_____

_____

(d)    Did you appeal the decision to the United States Court of Appeals?

☐ Yes            ☐ No

If "Yes," provide:

(1) Name of court: _____

(2) Date of filing: _____

(3) Case number: _____

(4) Result: _____

(5) Date of result: _____

(6) Issues raised: _____

_____

_____

_____

_____

12.    **Other appeals**

Other than the appeals you listed above, have you filed any other petition, application, or motion about the issues raised in this petition?

☐ Yes            ☒ No

If "Yes," provide:

(a) Kind of petition, motion, or application: _____

(b) Name of the authority, agency, or court: _____

_____

(c) Date of filing: _____

(d) Docket number, case number, or opinion number: _____

(e) Result: _____

(f) Date of result: _____

(g) Issues raised: _____

_____

_____

_____

_____

Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 (OKND 2241 Mod 07-2019)

## Grounds for Your Challenge in This Petition

13. State every ground (reason) that supports your claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground. Any legal arguments must be submitted in a separate memorandum.

**GROUND ONE:**  Unlawful Seizure of Child Without Warrant or Exigent Circumstances (4th Amendment)

(a) Supporting facts *(Be brief. Do not cite cases or law.)*:
DEC 03, 2021, OKDHS CPS seized my biological property female offspring G.L.Stephens from private school without a warrant and without exigent/emergent circumstances by a felon. No evidence of imminent danger. I had protective order (PO-2021-3843) that she obtained against her father Adam; she was 8.5 y/o can speak for self and she wanted to speak directly to judge but court actors won't let her. Seizure of offspring occurred without proper notice nor opportunity to respond to false allegations

(b) Did you present Ground One in all appeals that were available to you?
☒ Yes        ☐ No

**GROUND TWO:**  Violation of Due Process Rights in Child Removal Proceedings

(a) Supporting facts *(Be brief. Do not cite cases or law.)*:
Lack of any evidentiary hearing, and without joining indispensable parties at protective order and DHS Secret hearings 12/08/2021. OKDHS did not have adjudication hearing, forensic interview of child, Hearsays by convicted felon whose words are not to be believed per law were taken as absolute truth, while expert witnesses like physicians, advanced nurse practitioner, primary care physician, child psychologists, whistleblower in OKDHS, reliable mother, grandparents, church deacons, etc, were all ignored by Respondents

(b) Did you present Ground Two in all appeals that were available to you?
☒ Yes        ☐ No

**GROUND THREE:**  Placement with Documented Child Abuser

H

(a) Supporting facts *(Be brief. Do not cite cases or law.)*:
G.L.Stephens was placed in the custody of her father, Adam Sylvester Stephens, despite his documented history of child abuse substantiated by both Oregon DHS (involving his 15-year-old daughter) and Oklahoma DHS whistleblower Maria Chico. OKDHS supervisors Leah Sukovaty and Shasta Miller deliberately truncated official reports documenting this abuse history. This placement created an immediate and ongoing risk to G.L.S' safety. Court excluded evidence of Adam's abuse hx

(b) Did you present Ground Three in all appeals that were available to you?
☒ Yes        ☐ No

Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 (OKND 2241 Mod 07-2019)

**GROUND FOUR:**    Disregard of Valid Oregon Custody Decree. SEE ATTACHED FILING FOR MORE

(a) Supporting facts *(Be brief. Do not cite cases or law.):*
Oklahoma courts failed to honor a valid and binding Oregon divorce decree dated January 8, 2016, which established "50/50 joint legal and physical custody" of G.L.Stephens with "unhampered access to child for both parties." The decree also established "Jeep and Trailer in lieu of child support."
By disregarding this valid Oregon judgment and creating a contradictory custody arrangement without proper jurisdiction, Oklahoma violated this agreement. No proper jurisdiction existed under the Uniform Child Custody Jurisdiction and Enforcement Act to modify the Oregon decree.

(b) Did you present Ground Four in all appeals that were available to you?
☐ Yes        ☐ No

14.    If there are any grounds that you did not present in all appeals that were available to you, explain why you did not:    N/A

## Request for Relief

15. State exactly what you want the court to do:    Issue a Writ of Habeas Corpus ordering the immediate release of G.L.Stephens from Adam Sylvester Stephens' custody and restore custody to me, her biological owner/mother; Declare all custody, support, and enforcement orders, contempt orders, conviction or sentencing orders as they were all procured without jurisdiction, due process, or lawful adjudication; Issue a Permanent Restraining Order enjoining Defendants from enforcing these void orders; Order disclosure of unaltered reports documenting Adam Stephens' history of child abuse;
Return my passport and freedom to travel internationally and locally;
Recall false and malicious warrants for arrest of a corporation with name similar to mine;
Return my retirements including rolled over 401(k) with interested;
Remove all liens against properties of my landlord or anything assumed to be mine;
Unfreeze all my bank accounts;
Stop all garnishments;
Stop all predatory debt collection practices by CSS and its extensions/partners;
Prohibit retaliation against me for protected federal advocacy;
grant remote hearing access pursuant to my ADA rights;
Provide written findings of fact and conclusions of law; and
Grant such additional relief as justice requires to remedy these constitutional violations.

Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 (OKND 2241 Mod 07-2019)

### Declaration Under Penalty Of Perjury

If you are incarcerated, on what date did you place this petition in the prison mail system with the correct postage attached:

N/A

I declare under penalty of perjury that I am the petitioner, I have read this petition or had it read to me, and the information in this petition is true and correct. I understand that a false statement of a material fact may serve as the basis for prosecution for perjury.

Date:    06/05/2025

*without prejudice*
*linh-tran: stephens/Agent*

_____
Signature of Petitioner

1964 Ashley River Rd #B
Charleston, SC [29407]
817.631.3223
South Carolina
unit #
30112

N/A
_____
Signature of Attorney or other authorized person, if any

### Notary as JURAT CERTIFICATE

STATE OF MINNESOTA          )
                            ) ss
COUNTY OF SHERBURNE )

On this 05th day of June, 2025 before me, Melissa K. Vagle, a Notary Public, personally appeared a living woman Linh Tran Stephens ( the Authorized Representative and Beneficiary for Legal Fiction LINH TRAN STEPHENS©® ), who electronically (remotely) proved to me on the basis satisfactory evidence to be the woman whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her autograph(s) on the instrument the woman executed, the instrument.

i certify under PENALTY OF PERJURY under the lawful laws of Minnesota State and that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

*Melissa K. Vagle*
Signature of Notary/Jurat

MELISSA K VAGLE
Notary Public
State of Minnesota
My Commission Expires
January 31, 2028

Notary Public's Commission Expires: 01/31/2028

Tulsa District County Court of Oklahoma cases No. FD-2015-2228 docket C & F
https://tinyurl.com/4cdv5u56 ; jail David L Moss inmate ID# 1282383 (DLM#)for debtor
imprisonment with inability to pay [unconstitutional] for 2 months since 02/07/2024;
*Nonjurisdictional* OAH No.: 23-00313-73, *Fraudulent and nonjurisdictional* OK IV-D FGN:
000948641001; CPS Case 20652909, CPS referral # 2078246 & 2200561 against Adam for
child abuses among many other CPS referrals by nonparties since 2017 against Adam while
false # 2195835 against Linh; truthful PO-2021-3843 child against Adam,
frauds-upon-the-court **JD-2021-270**, Adam impeached for perjury PO-2021-4059, his two false
VPOs dismissed per CM-2022-285, CM-2022-157;

APPEALS all denied: DF-120612→CI-120847&DF-120848&**DF-120849**,
DF-121149→PR-121200 & MA-121255; DF-121254; **DF-122022** (debtor prison 2 month
despite inability to pay); **CV-2024-1311** (401k retirement/bank theft appeal); **MA-122445**
(mandamus for recusal of judges); **GJ-2024-1**, DF-121851 appeal for CJ-2023-1901 (breach of
contract); DHS Claims # 2520034513 started 10/04/2024, denial letter dated 12/17/2024
received 01/06/2025; **MA-122859** (mandamus for OSBI investigation per House of
Representative but denied because of inability to pay filing fees);

Federal lawsuits: Stephens vs. Sparkman et. al, case No. **22-CV-0480-CVE-JFJ** filed in 2022;
Stephens vs. Seibert et. al, **23-CV-553-GKF-SH** 12/21/2023; Stephens v. Child Support
Services of Oklahoma Department of Human Services et. el., **24-CV-216-JDR-CDL**
05/08/2024 appealed 10th circuit **Case No. 25-5063 PENDING STILL BY TODAY
05/05/2025**; Stephens v. Erica Parks and Dale Warner et. al. **24-CV-259-GKF-MTS**
06/03/2024 → United States Court of Appeals for the Tenth Circuit, Stephens v. Parks, et al.,
Appellate Case: 24-5138, filed 11/26/2024;

All appeals consistently raise constitutional violations including: due process denials,
discrimination based on national origin, debtor's prison implementation, double jeopardy,
invalid exercise of jurisdiction, and fraud upon the court by state actors, misconducts, etc.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

**Habeas Corpus Petition for G.L.Stephens and Civil Action Case No. 25-_____**
**Article iii judge assigned**: _____
as plaintiff permanently objected to any magistrates, clerks, and any other alternatives deviating from article iii constitutional judges under common law

0) **Linh Tran Stephens**, sui juris, a woman breathing with a living soul and the Holy Spirit of YAHUAH, the one-and-only Authorized Representative and Beneficiary of LINH TRAN STEPHENS®, the only rightful owner of her biological property female offspring G.L.Stephens, is a private individual with inherent sovereign rights,
   *Plaintiff,*                         vs.
1) **STATE OF OKLAHOMA and its divisions and employees/successors;**
2) **OKLAHOMA DEPARTMENT OF HUMAN SERVICES (OKDHS) and its divisions and its employees/successors;**
3) Bridget O'brien a/k/a **BRIDGET O'BRIEN** or BRIDGET KAY MENSER, in her individual capacity and in official capacity as OKDHS caseworker;
4) April Seibert a/k/a **APRIL SEIBERT**, in her individual capacity and in official capacity as Special Judge of Tulsa County District Court, Docket C;
5) Rodney Sparkman a/k/a **RODNEY SPARKMAN**, in his individual capacity and in official capacity as Special Judge of Tulsa County District Court, Docket C;
6) Todd Chesbro a/k/a **TODD CHESBRO**, in his individual capacity and in official capacity as Special Judge of Tulsa County District Court, Docket C;
7) Jeffrey Cartmell, a/k/a **JEFFREY CARTMELL** in his individual capacity and in official capacity as DIRECTOR OF OKDHS since 2024 replacing DEBORAH SHROPSHIRE
8) Gentner Drummond, a/k/a **GENTNER FREDERICK DRUMMOND** in his individual capacity and in official capacity as OKLAHOMA ATTORNEY GENERAL since 2023;
9) John Kevin Stitt, a/k/a, **J. KEVIN STITT**, in his individual capacity and in official capacity as GOVERNOR OF OKLAHOMA;
10) **OKLAHOMA CHILD PROTECTIVE SERVICES (CPS);**
11) **OKLAHOMA CHILD SUPPORT SERVICES (CSS)**
12) **TULSA COUNTY DISTRICT COURT and its divisions** (Family Court, Juvenile Court, Civil Court, Small Claim Court Division) **and its employees/successors**
13) **OKLAHOMA ATTORNEY GENERAL OFFICE (OAG);**
14) **OKLAHOMA SECRETARY OF STATE (SOS);**
15) **OKLAHOMA STATE GOVERNOR'S OFFICE;**
16) **ADAM SYLVESTER STEPHENS**, ex-husband of Linh Tran Stephen whose divorce was finalized in State of Oregon January 08, 2016
17) **DOES #1-99** known but unidentified STATE OF OKLAHOMA's employees,
    *Defendants*

## HYBRID EMERGENCY PETITION FOR WRIT OF HABEAS CORPUS FOR G.L.STEPHENS PURSUANT TO 28 U.S.C. § 2241, 28 U.S.C. § 1651, 12 O.S. § 1331, AND FOR INJUNCTIVE AND DECLARATORY RELIEF UNDER 42 U.S.C. § 1983 WITH REQUEST FOR PERMANENT RESTRAINING ORDER

**Notice to Agent is Notice to Principal, Notice to Principal is Notice to Agent, Notice applies to all successors and assigns; Affidavit is a Form of Evidence; Unrebutted Affidavit Stands as Truth in Commerce; Silence or NonResponse is Tacit Acquiescence/Agreement/Dishonor;**

## TABLE OF CONTENTS

TABLE OF CONTENTS...................................................................................................2

I. INTRODUCTION AND SUMMARY OF ACTION...................................................3

II. JURISDICTION & VENUE........................................................................................4

III. JUSTICIABILITY DOCTRINES INAPPLICABLE................................................5

IV. LEGAL STANDARD.................................................................................................7

V. CERTIFICATION UNDER FRCP 65(B)(1)(B)..........................................................9

VI. PARTIES.................................................................................................................10

VII. STANDING AND NEXT FRIEND CAPACITY....................................................23

VIII. PRELIMINARY STATEMENT............................................................................27

IX. REQUEST FOR REMOTE HEARINGS.................................................................28

X. REQUEST FOR EXPEDITED DISCOVERY AND PRESERVATION OF EVIDENCE.......30

XI. STATEMENT OF FACTS Sworn Affidavit of Truth.............................................30

XII. LEGAL CLAIMS FOR RELIEF...........................................................................64

    CAUSE OF ACTION I: PETITION FOR WRIT OF HABEAS CORPUS (28 U.S.C. § 2241, 28 U.S.C. § 1651, and 12 O.S. § 1331)
(Unlawful Detention of biological property (female offspring) G.L.Stephens in Violation of Constitutional Rights)
All Defendants.......................................................................................................64

    CAUSE OF ACTION II: VIOLATION OF CIVIL RIGHTS (42 U.S.C. § 1983) AND DEPRIVATION OF RIGHTS UNDER COLOR OF LAW (18 U.S.C. § 242).......................68

    CAUSE OF ACTION III: JUDICIAL DECEPTION AND INTERFERENCE WITH FAMILIAL ASSOCIATION (42 U.S.C. § 1983)
All Defendants.......................................................................................................71

    CAUSE OF ACTION IV: FALSE ARREST AND JUDICIAL DECEPTION (42 U.S.C. § 1983)
All Defendants.......................................................................................................72

    CAUSE OF ACTION V: MALICIOUS PROSECUTION (42 U.S.C. § 1983).......................73

    CAUSE OF ACTION VI: FIRST AMENDMENT RETALIATION (42 U.S.C. § 1983)
All Defendants.......................................................................................................74

    CAUSE OF ACTION VII: DISCRIMINATION BASED ON NATIONAL ORIGIN, GENDER, RELIGION, ADA RIGHTS, AND OTHER RIGHTS
All Defendants.......................................................................................................76

    CAUSE OF ACTION VIII: FRAUD UPON THE COURT
All Defendants.......................................................................................................77

    CAUSE OF ACTION IX: ONGOING HARASSMENT AND DENIAL OF RIGHTS
All Defendants.......................................................................................................78

CAUSE OF ACTION X: CIVIL CONSPIRACY TO DEPRIVE CONSTITUTIONAL RIGHTS UNDER 42 U.S.C. § 1985(3) All Defendants....................................................................................................... 79

CAUSE OF ACTION XI: DECLARATORY RELIEF UNDER 28 U.S.C. §§ 2201-2202 (Voidness of State Custody Orders, Structural Denial of Due Process) All Defendants....................................................................................................... 80

CAUSE OF ACTION XII: VIOLATION OF FULL FAITH AND CREDIT CLAUSE (U.S. CONST. ART. IV, § 1)................................................................................................ 82

CAUSE OF ACTION XIII: MONELL LIABILITY FOR UNCONSTITUTIONAL CUSTOMS, POLICIES, AND PRACTICES (42 U.S.C. § 1983)........................................ 85

CAUSE OF ACTION XIV: VIOLATION OF THE UNCONSTITUTIONAL CONDITIONS DOCTRINE.............................................................................................................. 87

CAUSE OF ACTION XV: VIOLATION OF FEDERAL PROTECTION OF CHILDREN AGAINST SEXUAL EXPLOITATION ACT (18 U.S.C. §§ 2251-2260A)............................ 90

CAUSE OF ACTION XVI: VIOLATION OF RIGHT TO TRAVEL (U.S. CONST. AMEND. XIV)...................................................................................................................... 92

CAUSE OF ACTION XVII: VIOLATION OF THE TAKINGS CLAUSE (U.S. CONST. AMEND. V).............................................................................................................94

CAUSE OF ACTION XVIII: VIOLATION OF ETHICAL STANDARDS AND CONFLICT OF INTEREST REGULATIONS (28 C.F.R. § 45.2)................................................... 96

XIII. REQUEST FOR EXPEDITED CONSIDERATION........................................... 99

XIV. PRAYER FOR RELIEF............................................................................... 100

XV. DEMAND FOR JURY TRIAL....................................................................... 102

## I. INTRODUCTION AND SUMMARY OF ACTION

COME NOW I, Affiant, named linh-tran: stephens (also known as "Linh Tran Stephens", "Plaintiff", "Appellant", "Mother", or "Linh" herein), one of the sovereign People (as seen in Oklahoma Constitution Article 2 Section 1) republican in form, Sui Juris–I am NOT the en legis, legal fiction, trust, corporation, sole proprietor "LINH TRAN STEPHENS©®", a "pro se", "person", "pauper", "indigent", "slave", "public servant", "government employee", "ward of State", nor a "U.S. citizen", "minor" in your dictionary, but Ii am a stateless private individual, a sentient and moral living breathing woman with a living soul and the Holy Spirit of YAHUAH--do properly service to all opposing parties this affidavit, in this court of civilian Public Record, to make this EMERGENCY PETITION FOR WRIT OF HABEAS CORPUS

pursuant to 28 U.S.C. § 2241, 28 U.S.C. § 1651 (the All Writs Act), and 12 O.S. § 1331,

combined with a request for Injunctive and Declaratory Relief under 42 U.S.C. § 1983, is hereby

submitted against all Defendants, including but not limited to STATE OF OKLAHOMA,

OKLAHOMA DEPARTMENT OF HUMAN SERVICES (OKDHS), OKLAHOMA CHILD

PROTECTIVE SERVICES (CPS), OKLAHOMA CHILD SUPPORT SERVICES (CSS),

TULSA COUNTY DISTRICT COURT, and their respective previous, current, and future

employees, divisions, agencies, partners, contractors, and successors, etc. Plaintiff seeks the

immediate release of G.L.Stephens from the unsafe and unlawful sole custody of Adam

Sylvester Stephens and of fraudulent SSA Title IV (social security act title four grant is

fraudulent because this family does NOT meet any criteria for SSA title IV) , which was

obtained through frauds-upon-the-court (for which there is no statute of limitations), and whose

paternity of G.L.Stephens is contested repeatedly but ignored by OKDHS. Plaintiff further seeks

injunctive and declaratory relief under 42 U.S.C. § 1983 to address the ongoing violations of the

Fourteenth Amendment rights of both Plaintiff and G.L.Stephens. Additionally, Plaintiff requests

a Permanent Restraining Order enjoining all Defendants from enforcing the constitutionally void

orders issued in Tulsa District Court Case No. FD-2015-2228, asserting that said orders

constitute acts of kidnapping and conspiracy perpetrated under color of law in violation of

clearly established federal rights. In support thereof, Plaintiff states:

## II. JURISDICTION & VENUE

This Court has jurisdiction over this Petition for a Writ of Habeas Corpus under 28

U.S.C. § 2241(a), 28 U.S.C. § 1651 (the All Writs Act), and 12 O.S. § 1331, as Plaintiff's female

offspring, G.L.Stephens, is detained after seizure without a warrant against the will of herself and

the biological owner/Trustee (biological flesh and blood and alive mother) under void state court

orders violating the Fourteenth Amendment, within this Court's territorial jurisdiction.

Jurisdiction over the 42 U.S.C. § 1983 claim is proper under 28 U.S.C. §§ 1331 and 1343(a)(3),

based on deprivations of due process and familial association by state

actors/employees/representatives. This Court has jurisdiction under 28 U.S.C. § 1331, as this

matter arises under the Constitution, laws, and treaties of the United States of America. The

Plaintiff invokes this Court's inherent authority to issue a writ of habeas corpus to secure the

welfare of her biological property/beneficiary(female offspring), G.L.Stephens, and restore her to

her lawful custodial parent/Trustee. This Court also has jurisdiction under **28 U.S. Code § 1332 –**

**Diversity of Citizenship**, or Amount in Controversy over $75,000;

Venue is appropriate under 28 U.S.C. § 1391(b)(1) and (2), as the events occurred in

Oklahoma, and majority of Defendants reside or resided within the Northern District of

Oklahoma–except Adam Sylvester Stephens was, by court order in January 2024 issued by April

Seibert (an employee of the State of Oklahoma and representative of judicial system), directed

Adam to relocate the child to State of Texas far away from Plaintiff/Mother. This order was

issued without proper jurisdiction and resulted in the concealment of the child from Plaintiff.

Plaintiff has exhausted available state remedies, including filing multiple motions to

challenge the validity of the underlying orders, all of which have been summarily denied without

factual statement of facts and without lawful conclusions of law addressing the substantive

constitutional claims, rendering further state court proceedings futile.

## III. JUSTICIABILITY DOCTRINES INAPPLICABLE

The **Rooker-Feldman doctrine** does not bar federal review in this case because Plaintiff

challenges not the outcome of a valid judgment but the ongoing enforcement of void orders

entered entirely without jurisdiction. The Tenth Circuit has made clear that Rooker-Feldman does

---

not apply where, as here, Plaintiff alleged independent constitutional violations by state actors/employees/representatives under color of law, not mere legal error. *Mo's Express, LLC v. Sopkin*, 441 F.3d 1229, 1237-38 (10th Cir. 2006).

**Younger abstention** is equally inapplicable. Federal courts may NOT abstain where the state forum is procedurally or structurally incapable of providing adequate relief, where bad faith or retaliatory motives infect the proceedings, or where extraordinary circumstances exist. *Phelps v. Hamilton*, 59 F.3d 1058, 1065 (10th Cir. 1995). The record here reflects all three exceptions. The Oklahoma judiciary has systematically denied Plaintiff access to meaningful review of her constitutional claims.

The domestic relations exception does NOT deprive this Federal Court of jurisdiction. That doctrine applies only to cases involving divorce, alimony, or child custody disputes between private parties that seek federal adjudication of traditional family law matters. It does not extend to federal constitutional claims against state actors who operate outside the bounds of lawful jurisdiction or who engage in systemic misconduct under color of law. Here, no proper paternity proceeding was ever commenced in a court with jurisdiction despite it being demanded numerous times through written and filed civilian public filings. Furthermore, the biological property (female offspring) G.L.Stephens was not included as a party in any adjudicative proceedings. Allegations of "Mother waiving all her rights" asserted by court officials, which contradict the Mother's sworn testimony and written affidavit, are in violation of due process. This action does not concern a domestic relations dispute, but rather a constitutional violation involving the unlawful seizure, detention, and restraint of a biological property (female offspring). Said actions were executed pursuant to duplicated and voided state court orders issued by the State of Oklahoma, which superseded the original order of the State of Oregon of

joint legal 50/50 custody order and "Jeep and Trailer in lieu of child support for G.L.Stephens" **(see Exhibit #1 for its relevant pages)**. Furthermore, the State of Oklahoma's orders were procured through fraudulent means and enforced without adherence to due process. These actions occurred despite numerous written demands from the House of Representatives of Oklahoma x 2 and District Attorney Adam Panter advocating for the release of G.L.Stephens to me/Plaintiff who is the fit, loving, and safe parent (See **Exhibit #2**). Plaintiff repeatedly asserted a refusal to contract with the State of Oklahoma, rejection of all offers and deals, and a demand for the State to refrain from interacting with her and her children. Furthermore, Plaintiff explicitly declared not being a U.S. citizen nor a citizen of the State of Oklahoma but a citizen of the country of Viet Nam in South Asia continent (not in Washington D.C.), and subsequently clarified her status as a stateless traveler domiciled in the Republic of South Carolina. As the Tenth Circuit has made clear, "Federal courts retain authority to adjudicate cases raising constitutional violations, even if the underlying facts relate to domestic relations." *Vaughan v. Smithson*, 883 F.2d 63, 64 (10th Cir. 1989). This case squarely falls within that exception to the exception.

Plaintiff does NOT seek to relitigate a custody matter. She seeks redress for a federal due process crisis: the unlawful seizure of her biological property i.e. female biological offspring through fraudulent orders and frauds-upon-the-courts by state actors and its employees, enforced by officials without lawful authority, and preserved through a coordinated campaign of obstruction, retaliations, and abuse. These are precisely the circumstances where federal intervention is NOT only appropriate but it is constitutional required.

## IV. LEGAL STANDARD

---

This Court's jurisdiction to grant a Writ of Habeas Corpus under 28 U.S.C. § 2241 is a cornerstone of federal authority to redress unconstitutional detentions by state actors, particularly where, as here, a minor child, G.L.Stephens, is unlawfully restrained under void state court orders procured through fraud and enforced without jurisdiction. *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Unlike typical custody disputes, this case involves a state-sanctioned kidnapping under color of law, rendering habeas relief appropriate when state remedies are exhausted or demonstrably futile. *Lehman v. Lycoming County Children's Services Agency*, 458 U.S. 502, 511-12 (1982). The Oklahoma Supreme Court's dismissal of all writs of mandamus, writs of inhibitions, recusal of nonjurisdictional special judges, and its refusal to reverse modification of custody and child support orders without corrective action confirms the collapse of impartial state adjudication, vesting this Court with the solemn duty to restore constitutional order.

For claims under 42 U.S.C. § 1983, this Court may grant injunctive and declaratory relief against ongoing violations of federal rights by state officials acting under color of law, unshielded by immunity when acting in clear absence of jurisdiction. *Ex parte Young*, 209 U.S. 123, 159-60 (1908); *Pulliam v. Allen*, 466 U.S. 522, 541-42 (1984). The continuing enforcement of constitutionally void orders constitutes an ongoing violation of clearly established federal rights. Such ongoing conduct justifies prospective relief where each day of enforcement inflicts new harm. *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005).

A permanent restraining order under FRCP 65(b) requires: (1) a substantial likelihood of success on the merits; (2) a significant risk of irreparable harm absent relief; (3) that the balance of equities tips in the movant's favor; and (4) that an injunction serves the public interest. *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1246 (10th Cir. 2001). Plaintiff easily

satisfies this standard, as the continued enforcement of void custody orders and child support orders—entered without jurisdiction or due process—causes ongoing and irreparable injury by unlawfully severing her relationship with G.L.Stephens, a harm no legitimate state interest can justify. See also *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The continued enforcement of void orders causes irreparable injury each day by severing the mother-child relationship without lawful justification. The equities and public interest overwhelmingly favor intervention, as no legitimate state interest can justify the ongoing enforcement of judicial orders that violate the sanctity of the parent-child bond. See *Santosky v. Kramer*, 455 U.S. 745, 753 (1982); *Troxel v. Granville*, 530 U.S. 57, 65-66 (2000).

Plaintiff respectfully requests that this Court take judicial notice under Federal Rule of Evidence 201 of *Stephens v. Child Support Services of Oklahoma Department of Human Services et al., 24-CV-216-JDR-CDL,* currently pending before this same District, which involves some overlapping parties, factual allegations, and systemic misconduct within the Oklahoma judiciary. The constitutional violations at issue here—rooted in the same pattern of fraud, abuse of process, and obstruction—require coordinated review and urgent relief to vindicate the Fourteenth Amendment and prevent further irreparable harm.

## V. CERTIFICATION UNDER FRCP 65(B)(1)(B)

The Plaintiff hereby certifies that from November 2022 to the present date, numerous advance notices have been duly provided to both the Office of the U.S. Attorney General and the Office of the Oklahoma Attorney General. As all Defendants are current state officials, or in the case of *Traskos*, a federal employee, the Plaintiff has formally informed them of the emergency relief being sought, inclusive of this application for an Emergent PRO, injunctive relief, and declaratory judgment.

As of the time of this filing, no confirmation or response has been received but simply

just ongoing retaliation by the very state actors named in this action. As in *Dees v. Hood et al.*,

where this issue remains unaddressed despite multiple contesting/objecting/protesting filings,

Exhusband and STATE OF OKLAHOMA previously filed criminal charges "Violation of

Protective Order" against Plaintiff for "calling 911". Accordingly, Plaintiff certifies that she

made more than good faith efforts to provide notices where practicable. However, in light of the

Defendants' failure to respond, the ongoing pattern of retaliation and obstruction, and the

immediate risk of irreparable harm, emergency relief without further notice is warranted under

Rule 6s(b)(1)(B).

## VI. PARTIES

0. Plaintiff **Linh Tran Stephens**, sui juris, a woman breathing with a living soul and the Holy

   Spirit of YAHUAH, the one-and-only Authorized Representative and Beneficiary of LINH

   TRAN STEPHENS®, is the biological owner/mother of female biological offspring

   G.L.Stephens, appearing as her next friend to vindicate their Fourteenth Amendment rights.

   Plaintiff is a naturalized American who retains her Vietnamese citizenship (again, she is not a

   "U.S. citizen") and domiciles in South Carolina since April 2024 (more than a year ago) and

   traveled through Oklahoma from August 2015 to March 2024. Plaintiff Linh Tran Stephens is

   an honorably discharged U.S. Navy Medical Corps veteran who served America country

   faithfully for five years and was honorably discharged to become a civilian on 01 AUG 2025,

   followed by dedicated service to veterans at the Veterans Affairs and to indigenous

   communities at Cherokee Nation clinic and was laid off (not fired) in September 2020. She

   has consistently demonstrated her commitment to caring for vulnerable populations as a

   healthcare provider. As a devoted Christian mother, she has made significant sacrifices for

her daughter's well-being, including providing her ex-husband with substantial properties fully loaded "Jeep and trailer in lieu of child support" during their divorce settlement in January 2016 in state of Oregon to ensure G.L.Stephens's stability and happiness. Despite being law-abiding sentient being with clean hands and pure heart, with no criminal history, Plaintiff has been subjected to egregious constitutional violations, including the unlawful seizure of her daughter without due process, fabricated allegations that were never substantiated, denial of her rights to familial association, and retaliatory actions when she attempted to assert her legal rights. Her pleas for justice have been systematically ignored by state courts, which have refused to consider substantial evidence of her fitness as a parent and the documented concerns regarding her ex-husband's history of child-abuse and pet-abuse. Throughout this ordeal, Plaintiff has exhausted all available remedies within the state court system while maintaining her dignity, faith, and unwavering commitment to her daughter's welfare. She seeks not only to be reunited with her child but also to ensure that similar constitutional violations do not continue to affect other families. The extraordinary circumstances of this case warrant the intervention of this Court to remedy the ongoing irreparable harm being inflicted upon both Plaintiff and her daughter through the enforcement of facially void orders obtained through fraud upon the court and maintained through the systemic violation of clearly established constitutional rights. Plaintiff is a stateless traveler, as defined by Honorable Mr. Justice MILLER in the Slaughter-House cases, 83 US 36 (1873).

1. Defendant **STATE OF OKLAHOMA**, through its judicial and executive officers, has enforced and continues to enforce void custody orders that unconstitutionally separate G.L.Stephens from her biological owner/mother. The State, acting through its various

departments and agencies, has systematically violated clearly established constitutional rights by seizing and continuing to detain G.L.Stephens without due process, proper jurisdiction, or factual basis. The State has established and maintained policies, practices, and customs that permit the unlawful separation of children from fit parents without adequate procedural safeguards, resulting in the ongoing violation of fundamental familial rights protected by the First and Fourteenth Amendments. Despite numerous notices, appeals, and judicial filings demonstrating these violations, the State has persisted in enforcing constitutionally void orders and has failed to implement corrective measures to prevent similar violations.

2. Defendant **OKLAHOMA DEPARTMENT OF HUMAN SERVICES (OKDHS)** is the state agency responsible for child welfare services in Oklahoma, operating through its division Oklahoma Child Protective Services (CPS) and Oklahoma Child Support Services (CSS). OKDHS orchestrated the unlawful removal of G.L.Stephens from Plaintiff's protective custody on December 3, 2021, without a warrant, without exigent circumstances, and without joining indispensable parties. OKDHS employees deliberately concealed evidence of abuse by Adam Sylvester Stephens, including the truncation of official reports, while simultaneously fabricating allegations against Plaintiff. The department has systematically failed to follow its own protocols for investigating abuse, ignored evidence presented by Plaintiff, refused to conduct forensic interviews of G.L.Stephens, denied kinship placement despite an extensive list of available relatives, and made no efforts toward reunification. OKDHS has established a pattern and practice of violating clearly established constitutional rights through policy directives that incentivize the removal of children from fit parents without adequate procedural protections.

3. Defendant **Bridget O'Brien a/k/a BRIDGET O'BRIEN or BRIDGET KAY MENSER**, in her individual capacity and in official capacity as OKDHS caseworker, perpetuated unsubstantiated allegations that led to the unlawful seizure of G.L.Stephens and has continued to participate in the enforcement of void orders. Evidence indicates she has a criminal history, including a felony conviction in Tulsa County case # CF-1999-2911 for selling alcohol to minors. O'Brien deliberately misrepresented statements made by G.L.Stephens during interviews, falsely claiming the child feared her mother when G.L.Stephens had actually disclosed abuse by her father. She refused to document or accept evidence of abuse presented by Plaintiff, declined to interview witnesses who could corroborate Plaintiff's claims, and failed to follow standard DHS protocols for investigating child abuse allegations. When confronted with evidence contradicting her allegations, O'Brien altered her claims multiple times, ultimately declaring "I KNOW YOU'RE GUILTY JUST BY LOOKING AT YOU!" under oath and on transcript (this transcript is in court filings and can be made available upon request to Plaintiff by this Court and by the jurors) without reviewing any devices or evidence. Her fabricated allegations and procedural violations directly led to G.L.Stephens's removal from her mother's protective custody and placement with a documented child abuser, acting in clear violation of established constitutional rights and professional standards.

4. Defendant **April Seibert a/k/a APRIL SEIBERT**, in her individual capacity and in official capacity as Special Judge of Tulsa County District Court, Docket C, is a state actor who presided over custody proceedings concerning G.L.Stephens. Evidence indicates Special Judge Seibert exceeded her judicial authority by making unauthorized mental health diagnoses against Plaintiff, overruling testimony from qualified mental health experts,

systematically excluding crucial expert witnesses who submitted notarized affidavits supporting Plaintiff's case, and imposing unconstitutional punitive actions amounting to cruel and unusual punishment including: (1) prohibiting all phone/video and physical contact between Plaintiff and her daughter under threat of imprisonment; (2) imposing restrictive and financially burdensome visitation conditions requiring $150/hour payments; (3) denying Plaintiff's American Disability Act accommodations by requiring sensitive diagnoses to be stated aloud in open court; and (4) retaliating against Plaintiff for asserting constitutional rights. Special Judge Seibert acted without proper jurisdiction and in clear absence of authority when modifying custody from 50/50 to zero contact, operating outside the bounds of judicial immunity when knowingly violating clearly established constitutional rights.

5. Defendant **Rodney Sparkman a/k/a RODNEY SPARKMAN**, in his individual capacity and in official capacity as Special Judge of Tulsa County District Court, Docket C, is a state actor who presided over critical hearings related to G.L.Stephens's custody. Evidence indicates that Special Judge Sparkman previously worked for DHS for decades and failed to disclose this significant conflict of interest when ruling on matters involving OKDHS. On December 17, 2021, Special Judge Sparkman signed an ex parte Emergency Custody Order without any argument, evidence, reliable witnesses, or cross-examination presented, and without a jury trial as demanded by Plaintiff. This order facilitated the continued separation of G.L.Stephens from her mother despite the absence of proper jurisdiction, due process, or factual basis. Special Judge Sparkman systematically excluded exculpatory evidence, including documentation of Adam Sylvester Stephens' history of child abuse, while accepting unsubstantiated allegations against Plaintiff without proper evidentiary standards. By acting without jurisdiction and in clear violation of established constitutional protections for

parental rights, Special Judge Sparkman exceeded the bounds of judicial immunity and directly contributed to the ongoing constitutional violations against Plaintiff and G.L.Stephens. His actions reflect a pattern of procedural irregularities that have prevented meaningful review of Plaintiff's constitutional claims and perpetuated the unlawful detention of G.L.Stephens in violation of clearly established rights.

6. Defendant **Todd Chesbro a/k/a TODD CHESBRO**, in his individual capacity and in official capacity as Special Judge of Tulsa County District Court, Docket C, is a state actor who participated in judicial proceedings related to G.L.Stephens' custody matter. As successor or concurrent judge with Special Judge Seibert on Docket C, Special Judge Chesbro continued to enforce unconstitutional orders, ignored evidence of child abuse by Adam Sylvester Stephens, disregarded Plaintiff's objections to jurisdiction, and participated in the systemic denial of due process. By enforcing void orders issued without proper jurisdiction and continuing the unlawful detention of G.L.Stephens, Special Judge Chesbro acted outside the bounds of judicial immunity when knowingly perpetuating constitutional violations despite Plaintiff's repeated notices, objections, and appeals. His actions contributed to the ongoing separation of G.L.Stephens from her biological mother without lawful justification and in violation of clearly established constitutional rights.

7. Defendant **Jeffrey Cartmell, a/k/a JEFFREY CARTMELL** in his individual capacity and in official capacity as Director of OKDHS since August 28, 2024 replacing Deborah Shropshire, a/k/a DEBORAH SHROPSHIRE, is the highest administrative official responsible for overseeing all operations, policies, and practices of the Oklahoma Department of Human Services, including its Child Protective Services and Child Support Services divisions. As the current Director, Defendant Cartmell bears ultimate responsibility

for ensuring the agency's compliance with constitutional requirements, federal and state laws, and professional standards in child welfare cases. Upon assuming office, Defendant Cartmell was provided with multiple communications, affidavits, and formal notices regarding the ongoing constitutional violations in Plaintiff's case, including evidence that OKDHS employees had deliberately truncated reports documenting Adam Sylvester Stephens' history of child abuse, yet he has taken no corrective action and has continued the policies and practices of his predecessor. In his individual capacity, Defendant Cartmell has demonstrated deliberate indifference to clearly established constitutional rights by maintaining policies and practices that incentivize the removal of children without adequate due process and by failing to discipline employees who fabricated allegations or concealed exculpatory evidence. His continued authorization of OKDHS resources to enforce facially void orders despite notice of their constitutional infirmities directly contributes to the ongoing deprivation of Plaintiff's fundamental rights. Despite having the authority and obligation to remedy these violations upon taking office, Defendant Cartmell has instead chosen to perpetuate the unlawful separation of G.L.Stephens from her mother and the enforcement of void custody and support orders in violation of clearly established law. PREVIOUSLY in his place was Defendant **Deborah Shropshire, M.D.**, in her individual capacity and in official capacity as Director of OKDHS since her appointment, is the highest administrative official responsible for overseeing all operations, policies, and practices of the Oklahoma Department of Human Services, including its Child Protective Services and Child Support Services divisions. As Director, Dr. Shropshire bears ultimate responsibility for ensuring the agency's compliance with constitutional requirements, federal and state laws, and professional standards in child welfare cases. Despite her professional background as a physician, Dr. Shropshire has failed

to implement adequate safeguards to prevent the unconstitutional removal of children from fit parents, ignored documented evidence of procedural violations within her agency, and permitted the continued enforcement of void orders separating G.L.Stephens from her mother. Dr. Shropshire received multiple communications, affidavits, and formal notices regarding the constitutional violations in Plaintiff's case, including evidence that OKDHS employees had deliberately truncated reports documenting Adam Sylvester Stephens' history of child abuse, yet took no corrective action. In her individual capacity, Dr. Shropshire demonstrated deliberate indifference to clearly established constitutional rights by maintaining policies and practices that incentivize the removal of children without adequate due process and by failing to discipline employees who fabricated allegations or concealed exculpatory evidence. Her continued authorization of OKDHS resources to enforce facially void orders despite notice of their constitutional infirmities directly contributes to the ongoing deprivation of Plaintiff's fundamental rights.

8.  Defendant **Gentner Drummond, a/k/a GENTNER FREDERICK DRUMMOND** in his individual capacity and in official capacity as OKLAHOMA ATTORNEY GENERAL since 2023, is the chief legal officer for the State of Oklahoma with supervisory authority over legal matters involving state agencies, including OKDHS and its divisions. As Attorney General, Defendant Drummond bears responsibility for ensuring state agencies operate within constitutional boundaries and comply with federal and state law. Despite receiving numerous communications, affidavits, and formal notices regarding the unconstitutional actions taken against Plaintiff and her daughter, Defendant Drummond failed to investigate or intervene to remedy the ongoing constitutional violations. He further directed his office to defend and perpetuate the unlawful actions of state actors rather than fulfilling his oath to

uphold the Constitution. In his individual capacity, Defendant Drummond had knowledge of the constitutional violations occurring in Plaintiff's case yet chose to ratify and facilitate these violations through deliberate inaction and continued legal support for unconstitutional practices.

9. Defendant **John Kevin Stitt, a/k/a, J. KEVIN STITT**, in his individual capacity and in official capacity as GOVERNOR OF OKLAHOMA, is the chief executive officer of the State of Oklahoma with ultimate supervisory authority over all executive branch agencies, including OKDHS, CPS, and CSS. As Governor, Defendant Stitt establishes policies, appoints directors, and bears responsibility for ensuring state agencies comply with constitutional requirements in their operations. Despite receiving multiple communications, legislative inquiries, and formal notices regarding the systemic constitutional violations in Plaintiff's case and others similarly situated, Defendant Stitt failed to exercise his executive authority to investigate, remedy, or prevent continued violations. He continued to approve funding and support for agencies engaged in unconstitutional practices while ignoring documented evidence of widespread due process violations. In his individual capacity, Defendant Stitt had actual knowledge of the constitutional violations occurring within agencies under his supervision yet chose to permit these violations to continue unabated, demonstrating deliberate indifference to clearly established constitutional rights.

10. Defendant **OKLAHOMA CHILD PROTECTIVE SERVICES (CPS)** is a division of OKDHS that effectuated the unlawful removal of G.L.Stephens from Plaintiff's custody on December 3, 2021. The Defendant seized Plaintiff's biological property without a warrant and in the absence of exigent circumstances, despite the offspring's well-being and safety while under Plaintiff's protective custody and child's own protective order against her

biological father, Adam Sylvester Stephens. Furthermore, the Defendant persists in enforcing custody orders deemed void due to a lack of jurisdiction. The Defendant lacked proper standing in contract and commercial law, as all alleged signatures were forged, photoshopped, or waived without informed consent. The Mother never granted full power of attorney over herself or her children to any party nor any state actors ever.

11. Defendant **OKLAHOMA CHILD SUPPORT SERVICES (CSS)** is a division of OKDHS that has pursued punitive enforcement actions against Plaintiff for alleged child support arrearages, despite the existence of a binding Oregon decree that specifically established "Jeep and Trailer in lieu of child support" and despite Plaintiff's documented financial indigency. CSS has instituted unconstitutional collection practices including imprisonment for debt, passport seizure preventing international travel, improper garnishment of retirement accounts (including Rolled Over 401(k)) established during a subsequent marriage, and other coercive measures without affording due process protections. CSS has enforced duplicated and void child support orders that violate judicial estoppel, res judicata, and other established legal principles, and has continued these enforcement actions despite Plaintiff's repeated objections, appeals, and proof of financial hardship. These actions constitute a violation of clearly established constitutional prohibitions against debtors' prisons and the right to travel, as well as violations of federal law regarding the protection of retirement accounts.

12. **TULSA COUNTY DISTRICT COURT** and its divisions (Family Court, Juvenile Court, Civil Court, Small Claim Court Division) and its employees are state actors who have systematically facilitated the constitutional violations against Plaintiff and G.L.Stephens. The Court has repeatedly enforced void orders, denied Plaintiff's constitutional right to due process, refused to acknowledge valid jurisdictional challenges, sealed evidence unfavorable

to the state's position, obstructed meaningful review of constitutional claims, and facilitated the unlawful separation of Plaintiff from her biological property after their unwarranted seizure of her biological property. Court employees have consistently disregarded evidence of abuse by Adam Sylvester Stephens while accepting unsubstantiated allegations against Plaintiff without proper evidentiary hearings. The Court has further violated Plaintiff's rights by denying her in forma pauperis status despite documented financial hardship, preventing access to court records and transcripts necessary for meaningful appellate review, and imposing punitive financial barriers to justice. Through these actions, the Court has established a pattern and practice of constitutional violations that continue to deprive Plaintiff of her fundamental rights.

13. Defendant **OKLAHOMA ATTORNEY GENERAL OFFICE (OAG)** is the state agency responsible for providing legal representation to the State of Oklahoma and its agencies, including OKDHS, CPS, and CSS. The OAG has facilitated the ongoing constitutional violations by providing legal support and representation to state actors engaged in unlawful conduct, despite receiving notice of these violations. The OAG has defended demonstrably void orders in state court proceedings, opposed Plaintiff's efforts to obtain relief through proper legal channels, and contributed to the systemic obstruction of justice that has prevented meaningful review of Plaintiff's constitutional claims. Despite its obligation to uphold the law and protect citizens from constitutional violations, the OAG has instead used its resources and authority to perpetuate and defend the unlawful actions of other state defendants.

14. Defendant **OKLAHOMA SECRETARY OF STATE**, in their individual capacity and in official capacity as the chief authenticating officer for the State of Oklahoma, is responsible

for maintaining all official records, authenticating documents, and overseeing the registration

of corporations, limited liability companies, and other business entities within the state. The

Secretary of State bears responsibility for maintaining the corporate registrations that

establish the legal fiction entities operating as courts, agencies, and government departments

which have engaged in constitutional violations against Plaintiff. Despite receiving proper

notices, affidavits, and legal documentation from Plaintiff challenging the jurisdiction and

authority of these entities, the Secretary of State has failed to take appropriate action to

ensure these entities operate within their lawful bounds. The Secretary has continued to

authenticate documents, orders, and warrants issued without proper jurisdiction or

constitutional authority, thereby facilitating the ongoing constitutional violations against

Plaintiff and her daughter. The Secretary of State has knowledge of the commercial nature of

court proceedings under the Court Registry Investment System (CRIS) yet continues to

authenticate and legitimize void orders that violate Plaintiff's fundamental rights. By refusing

to acknowledge Plaintiff's properly filed notices and declarations regarding her status as a

living woman with a soul, separate from the legal fiction LINH TRAN STEPHENS®, the

Secretary of State has contributed to the systemic deprivation of rights by maintaining the

administrative infrastructure that enables these constitutional violations to continue

unchecked.

15. Defendant **OKLAHOMA STATE GOVERNOR'S OFFICE** is the executive branch agency

with ultimate supervisory authority over all state agencies, including OKDHS, CPS, and

CSS. The Governor's Office establishes policies, procedures, and directives that guide the

operation of these agencies, and bears responsibility for ensuring constitutional compliance.

Despite receiving multiple notices, legislative inquiries, and documented evidence of

truncated from official reports by a DHS supervisor Leah Sukovaty and Shasta Miller in an apparent attempt to conceal Adam Sylvester Stephens' history of child abuse.

## VII. STANDING AND NEXT FRIEND CAPACITY

15. Plaintiff brings this action as the biological owner (mother) and lawful custodian of G.L.Stephens, a minor child unlawfully restrained under color of law by Defendants. Plaintiff has never had her parental rights terminated through any lawful judicial proceeding, has never been adjudicated unfit by any court of competent jurisdiction, and retains all constitutionally protected interests in the care, custody, and control of her child. The Supreme Court has long recognized that the "liberty" protected by the Due Process Clause includes the right of parents to "establish a home and bring up children" and "to control the education of their own." *Meyer v. Nebraska*, 262 U.S. 390, 399, 401 (1923); *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (recognizing parental rights as "perhaps the oldest of the fundamental liberty interests recognized by this Court").

16. As such, Plaintiff proceeds as G.L.Stephens's next friend, authorized under *Whitmore v. Arkansas*, 495 U.S. 149, 163-64 (1990), which permits a competent adult to litigate on behalf of a minor who is unable to pursue relief independently and where the next friend is "truly dedicated to the best interests of the person on whose behalf [she] seeks to litigate." The Supreme Court in *Whitmore* established a two-part test for next friend standing: (1) providing an adequate explanation why the real party in interest cannot appear on their own behalf, and (2) demonstrating that the next friend is "truly dedicated to the best interests of the person on whose behalf [she] seeks to litigate." Id. at 163-64. Both elements are satisfied here, as G.L.Stephens is a minor child lacking legal capacity to bring suit independently, and Plaintiff, as the biological mother who has demonstrated ongoing dedication to her child's

welfare, is unquestionably committed to G.L.Stephens's best interests. See also *T.W. v. Brophy*, 124 F.3d 893, 897 (7th Cir. 1997) (recognizing natural parents' presumptive qualification to represent their children's interests).

17. The contention that only Bar Association members may bring habeas corpus petitions on behalf of children is demonstrably incorrect and constitutionally unsound. The Supreme Court in *M.L.B. v. S.L.J.*, 519 U.S. 102, 116-17 (1996), explicitly recognized that the right to maintain the parent-child relationship cannot be conditioned on one's ability to retain counsel, holding that "the interest of parents in their relationship with their children is sufficiently fundamental to come within the finite class of liberty interests protected by the Fourteenth Amendment." This constitutional protection would be rendered meaningless if parents were categorically barred from seeking habeas relief for their unlawfully detained children merely because they proceed without attorney representation.

18. Furthermore, 28 U.S.C. § 2242 explicitly provides that an application for a writ of habeas corpus "shall be in writing signed and verified by the person for whose relief it is intended or by someone acting in his [or her] behalf." The statute imposes no requirement that the person acting on behalf of the detained individual be a licensed attorney. As the Supreme Court noted in *Bounds v. Smith*, 430 U.S. 817, 821 (1977), "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers." This principle applies with even greater force to parents seeking to vindicate the liberty interests of their unlawfully detained children.

19. In *Whitmore*, the Supreme Court traced the history of "next friend" standing back to English common law, noting that it has been "long accepted" that "next friends" may appear in court on behalf of detained prisoners who are unable to seek relief themselves. 495 U.S. at 162.

Notably, the Court placed no attorney requirement on this historical practice. The Ninth

Circuit in *Coalition of Clergy v. Bush*, 310 F.3d 1153, 1159 (9th Cir. 2002), while addressing

next friend standing requirements, emphasized that "there are no federal cases requiring next

friends to be attorneys," directly contradicting any contention that BAR membership is a

prerequisite for filing habeas petitions on behalf of another.

20. The Federal Rules of Civil Procedure recognize that parents may represent their minor

children's interests in federal court without attorney representation. Fed. R. Civ. P. 17(c)(1)

provides that "a general guardian, a committee, a conservator, or a like fiduciary" may sue on

behalf of a minor. The Supreme Court has recognized that parents naturally fall within this

category. *Cf. Elk Grove Unified School District v. Newdow*, 542 U.S. 1, 15 (2004)

(recognizing that parents generally have standing to sue on behalf of their minor children).

21. Moreover, in *Lehman v. Lycoming County Children's Services Agency*, 458 U.S. 502, 513-14

(1982), while addressing the availability of federal habeas corpus to challenge state child

custody determinations, the Court acknowledged that parents have standing to pursue such

claims, stating only that "federal habeas has never been available to challenge parental rights

or child custody" without imposing any requirement that such challenges must be brought by

licensed attorneys. The Court's analysis focused on the nature of the claims, not the

professional status of the person bringing them.

22. In *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973), the Supreme Court emphasized that

habeas corpus is fundamentally a remedy for unlawful restraint of liberty, regardless of who

brings the petition. The Court has consistently focused on the liberty interest at stake rather

than the identity or professional credentials of the Plaintiff. This aligns with the fundamental

purpose of the Great Writ—to provide an effective remedy against unlawful

detention—which would be frustrated by imposing artificial barriers like mandatory attorney
representation.

23. Finally, the Supreme Court's decision in *Turner v. Rogers*, 564 U.S. 431, 448 (2011),
recognized that in certain civil proceedings—specifically including those that might result in
deprivation of liberty—due process does not categorically require representation by counsel.
If individuals may represent themselves in proceedings where their own liberty is at stake, it
would be illogical and unjust to prohibit parents from seeking habeas relief for their children
without attorney representation.

24. Plaintiff is also the attorney-in-fact for G.L.Stephens pursuant to inherent parental authority
recognized in *Wisconsin v. Yoder*, 406 U.S. 205, 232 (1972) (acknowledging "the
fundamental interest of parents in the religious upbringing of their children" and broader
decision-making authority). Plaintiff satisfies all standing requirements under Article III as
articulated in *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) and reaffirmed in
*TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021): (1) she has suffered a concrete,
particularized injury in fact through the unlawful seizure and continued detention of her
child; (2) this harm is directly traceable to Defendants' actions undertaken under color of law;
and (3) the requested relief—immediate return of G.L.Stephens to her lawful custodian—will
unquestionably redress that injury.

25. The Third Circuit in *B.S. v. Somerset County*, 704 F.3d 250, 259-60 (3d Cir. 2013), explicitly
recognized that "a parent deprived of custody of his or her child is clearly injured by the
interference with the parent's right to the companionship, care, custody, and management of
their children," thereby establishing an injury-in-fact for standing purposes. See also
*Duchesne v. Sugarman*, 566 F.2d 817, 825 (2d Cir. 1977) (holding that "the right of the

family to remain together without the coercive interference of the awesome power of the state" is a fundamental liberty interest protected by the Fourteenth Amendment).

26. Pursuant to 28 U.S.C. § 2242, an application for a writ of habeas corpus may be made by the person detained or "by someone acting on his behalf," further establishing statutory authority for Plaintiff's capacity to bring this action as next friend. The "constitutional imperative to preserve familial bonds" recognized in *Santosky v. Kramer*, 455 U.S. 745, 753 (1982), provides additional foundation for Plaintiff's standing in this proceeding.

## VIII. PRELIMINARY STATEMENT

27. This case represents an extraordinary miscarriage of justice that strikes at the heart of our constitutional order. Plaintiff Linh Tran Stephens, an honorably discharged U.S. Navy veteran and devoted mother, seeks emergency relief from this Court to remedy the unlawful seizure and continuing detention of her daughter, G.L.Stephens, by state actors operating without lawful jurisdiction and in flagrant violation of clearly established constitutional rights.

28. On December 3, 2021, without a warrant, without exigent circumstances, and without due process, Oklahoma Child Protective Services seized G.L.Stephens from her private school and placed her in the sole custody of Adam Sylvester Stephens—a man with a documented history of child abuse substantiated by both Oregon and Oklahoma authorities. This extraordinary state action occurred despite the existence of a valid Oregon custody decree establishing 50/50 joint custody, and despite the availability of extensive evidence demonstrating that G.L.Stephens was safe in her mother's care.

29. In the years since this unlawful seizure, Oklahoma officials have systematically obstructed Plaintiff's access to meaningful judicial review, sealed exculpatory evidence, concealed

documentation of Adam Sylvester Stephens' history of child abuse, and repeatedly retaliated against Plaintiff for asserting her constitutional rights. The state has fabricated a series of unfounded allegations to justify its actions, while simultaneously blocking Plaintiff's access to court records, denying her the opportunity to present contrary evidence, and ignoring the testimony of qualified experts who have affirmed her fitness as a parent.

30. This case transcends a mere custody dispute between private parties. It represents a systemic failure of the Oklahoma judiciary to protect the fundamental constitutional rights of both parent and child against arbitrary state action. The Fourteenth Amendment's due process guarantees and the sanctity of the parent-child relationship—repeatedly affirmed by the Supreme Court as "perhaps the oldest of the fundamental liberty interests recognized"—have been sacrificed on the altar of administrative convenience and institutional self-protection.

31. Every day that G.L.Stephens remains separated from her fit and loving mother under these constitutionally void orders represents a continuing violation of federal rights that inflicts irreparable harm on both mother and child. The integrity of our constitutional system demands immediate judicial intervention to halt this ongoing deprivation of liberty and to restore G.L.Stephens to her rightful custodian.

32. This petition invokes this Court's solemn responsibility to serve as the guardian of constitutional rights when state processes have failed. As the Supreme Court recognized in *Ex parte Young*, federal courts have <u>not only the authority but the duty to intervene when state officials act in violation of the Constitution</u>. That duty is especially compelling when, as here, the state's actions sever the sacred bond between parent and child without lawful justification.

## IX. REQUEST FOR REMOTE HEARINGS

33. Plaintiff, a disabled litigant proceeding sui juris, respectfully requests that this Court order that all hearings possible in this matter be conducted remotely, pursuant to her rights under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq., and the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

34. Plaintiff has been repeatedly affirmed as financially indigent by the Oklahoma Supreme Court (case # DF-120849) and the Federal Courts, and subsists on zero income. Due to her limited financial means and the physical burden of interstate travel from South Carolina to Oklahoma, she cannot feasibly attend in-person hearings in the Northern District of Oklahoma without undue hardship. See *Tennessee v. Lane*, 541 U.S. 509, 533-34 (2004); *Boddie v. Connecticut*, 401 U.S. 371, 380-81 (1971). FRCP 43(a) permits testimony and participation via contemporaneous transmission "for good cause in compelling circumstances and with appropriate safeguards." Plaintiff satisfies this standard. See *Robertson v. Las Animas County Sheriff's Dep't*, 500 F.3d 1185, 1195-96 (10th Cir. 2007).

35. Moreover, given that Plaintiff now resides in South Carolina and the disputed custody and paternity orders concern a child unlawfully seized from her in Oklahoma without jurisdiction, forcing physical attendance would only exacerbate the deprivation of her constitutional rights. Previous courts have already violated Plaintiff's ADA rights by denying her reasonable accommodations despite formal requests, and Special Judge April Seibert specifically required Plaintiff to disclose her private medical diagnoses in open court rather than respecting her privacy rights.

36. In light of the above and the financial and physical constraints imposed by her limited resources and geographic distance, Plaintiff respectfully requests an immediate order permitting remote participation in all future proceedings in this case.

## X. REQUEST FOR EXPEDITED DISCOVERY AND PRESERVATION OF EVIDENCE

37. Pursuant to FRCP 26(d), 26(f), 34, and 65 and this Court's inherent equitable authority to prevent irreparable harm and preserve the integrity of judicial proceedings, Plaintiff respectfully requests that the Court enter an order authorizing narrowly tailored expedited discovery and directing the immediate preservation of all relevant documents, communications, and electronically stored information (ESI) in the possession, custody, or control of Defendants and their affiliated agencies.

38. Expedited discovery is appropriate where good cause exists, particularly when preliminary injunctive relief is sought or where there is a demonstrable risk of spoliation, concealment, or irreparable evidentiary harm. The Tenth Circuit has recognized that district courts may permit discovery before the Rule 26(f) conference upon a showing of need, reasonableness, and proportionality. See *Bustos v. United States*, 257 F. App'x 171, 174 (10th Cir. 2007); see also *Pod-Ners, LLC v. N. Feed & Bean of Lucerne Ltd. Liab. Co.*, 204 F.R.D. 675, 676-77 (D. Colo. 2002).

39. This case presents compelling circumstances warranting expedited discovery, as evidence already exists that Oklahoma officials have truncated, altered, and concealed critical documents—particularly those documenting Adam Sylvester Stephens' history of child abuse. Plaintiff seeks immediate production of unaltered records and communications related to the seizure of G.L.Stephens and subsequent custody proceedings, which are necessary to prevent continued irreparable harm and to support her request for emergency injunctive relief.

## XI. STATEMENT OF FACTS *Sworn Affidavit of Truth*

republic South Carolina }    *Notice to Agent is Notice to Principal, Notice to Principal is Notice*
}ss    *to Agent, Notice applies to all successors and assigns; Affidavit is a*
county Charleston    }    *Form of Evidence; Unrebutted Affidavit Stands as Truth in*
*Commerce; Silence or NonResponse is Tacit*
*Acquiescence/Agreement/Dishonor;*

i, linh-tran: stephens, being of sound mind and competent to make this verification, do hereby

solemnly affirm and declare as follows:

**CONCISE SUMMARY**:

18. i am the flesh and blood natural living woman breathing with a soul and a Holy Spirit and my

name is Linh Tran Stephens; i have served honorably in the U.S. Navy Medical Corps for

five years then became a civilian, followed by two years serving the Veterans Affairs and two

years serving Indian Health Services at Cherokee Nation clinic followed by being laid off

during pandemic 09/2020 then small business owner, dedicating my life to the service and

protection of our nation and defending the United States Constitution. Obeying my religious

beliefs as a Christian, i granted my ex-husband, Adam Sylvester Stephens, 50/50 custody of

our daughter, G.L.Stephens, without demanding child support during our finalized divorce in

State of Oregon in January 2016; as part of this agreement, despite earning $80,000 a year or

so, i also provided Adam with a fully loaded Jeep Wrangler and a trailer in lieu of child

support, prioritizing the young woman G.L.Stephens' stability and happiness. This agreement

was duly autographed in the presence of public notaries and was finalized by a district court

judge without any objections from either party.

19. Horrifically, on December 03, 2021, young woman G.L.Stephens (8.5 years old) was forcibly

kidnapped from my safe, protective custody (case # PO-2021-3843 against Adam) by

Oklahoma Child Protective Services ("*CPS*") without a warrant, without criminal charges,

documented evidence, or credible witnesses against me then inexplicably awarded

emergency sole custody to Adam, a known and documented child abuser. CPS deprived

kinship placement despite having a comprehensive seven-page list of safe, fit, available, and willing family members and close family friends in Oklahoma, Texas, and Oregon. There were no efforts made by CPS for reunification even now. False allegations of "child pornography, therefore mental injury" were levied against me still despite absence of any criminal charges and despite my innocence was confirmed by forensic analysis and testimonies by the reputable individuals such as private investigator David Ballard, child psychologist Jim Lovett's, OKLAHOMA DHS child investigator OKDHS whistleblower Maria Chico, 30+ year experience child psychologist Jim Lovett, 20+ year school director Jayme Wingo-Martin and 20+ year school teacher Susie Panzer, medical providers Jeri Townsend, Moris Laca, Helen Johnson church's family, grandma and great aunt. Adam's prior termination of parental rights by the Oregon DHS for his personal 15-year-old daughter, Ariel Stephens (a fact known to all Oklahoma courts and readily available), and her subsequent court-ordered name change, social security number change, and date of birth change for Ariel, and the mysterious disappearance of her mother years ago are deeply troubling facts that have been consistently ignored by the court actors. Furthermore, Special Judge April Seibert systematically excluded crucial expert witnesses who had submitted notarized affidavits supporting my case against DHS and my long-divorced exhusband Adam, which all were filed onto courts but unlawfully sealed and ignored by judges and appeal courts. This includes the reports by my primary care medical doctors (Jeremy Ransdell, D.O.) and my Guardian ad Litem ("GAL") Valeria Blackstock. Special Judge Seibert and OKDHS CPS also immediately removed a reliable witness, Heather Collins, from the stand after Ms. Collins sworn in and offered valid proofs and first hand witness testimony against the same unreliable and child-abusive GAL, Stephen E. Hale, who

recommended her daughter be cruelly isolated with a five-time substantiated child-sexual

abuser via forensic exam reports by child experts and by same OKDHS CPS. My daughter

G.L.Stephens was subpoenaed numerous times to speak in courts but was never allowed in.

20. Meanwhile, Special Judge April Seibert and dishonest, child abusive GAL Stephen E. Hale

exceeded their judicial authority by making defamatory and invalid mental health diagnoses

and child-abuse determinations against me while simultaneously overruling truthful

testimony from qualified mental health experts who are not connected to the court and

overruled my objections or my questioning of the court's jurisdiction/authority without any

lawful justification nor valid contracts between us. The judge improperly assumed the role of

mental health expert and child expert, making clinical determinations outside her judicial

capacity and without supporting expert testimony and biasedly against me, while biasedly

ignoring condemning testimonies and evidence against Adam, my long divorced exhuband.

The nonjurisdictional Oklahoman judge modified Oregon's finalized custody from 50/50 to

zero contact with the child ever—unless I pay $150/hour for therapeutic supervised visits

with her chosen therapist (she denied three therapists of my choice, also denied option with

Jim Lovett—child's previous and available therapist) that i did not consent to and objected

repeatedly and appealed higher up—I have exhausted all state remedies without any justice,

repentance, nor remedy. She unlawfully terminated my fundamental parental right to access

my biological property with zero spect of evidence and zero first hand witnesses and zero

demanded jury trial of my peers, depriving me of any custody or meaningful contact with my

daughter; her decision cited "contempt of court" based on my compliance with a

court-ordered psychological evaluation from a board-certified physician (MD/DO)

INSTEAD OF going to the court's preferred non-clinical Ph.D. psychologist who has

financial connections to the court systems charging $2,500 that i don't have.

21. The court's final decision 2.5 years later on February 20th, 2024, which granted finalized sole custody to Adam and allowed him to relocate with my offspring permanently to Texas (again overruling my objections and my valid justifications that any other ethical judge would agree with me), posed serious ethical questions, especially given Adam's documented history of abuse towards children and pets on top of his history of documented visual and audible hallucinations and seizures, and terminated parental rights court orders and a permanent protective order from female children aged fifteen and his strangulation of pets.

22. Special Judge April Seibert and OKDHS employees without my consent nor valid contracts continued to impose a series of unconstitutional punitive actions amounting to cruel and unusual punishment:

(1) Prohibited all phone/video and physical contact with my daughter under threat of imprisonment, overruling my repeated objections;

(2) Imprisoned me for two months due to inability to pay court-ordered child support of court-inflated, court-fabricated after unlawfully imputed-income calculations to alleged debt of $2,360.24/month to the State of Oklahoma despite my submitted unrebutted IRS records and accountants' records proving my documented financial hardship and despite my assignment of indigent attorney and despite affirmation of financial indigency by Oklahoma Supreme Court case # DF-120849 with clear and convincing proofs; this is cruel and usual punishment for nonviolent crime of owing alleged "debt" that was not validated but was fraudulent to unjustly enrich the State and OKDHS.

(3) Authorized DHS CSS to seize my U.S. passport, preventing me from visiting terminally ill relatives overseas, deprivation of freedom to travel without any jury trial as i demanded;

(4) My 401k retirement, earned during my second marriage, was illegally seized without a warrant or any spousal consent; our $64,445.92 was taken against both owners' objections for alleged child support owed to my ex-husband Adam from my first marriage, despite the ERISA fund having been established two years AFTER my finalized divorce to Adam and was earned during another marriage (nonparty did NOT give consent to garnishment of his marital asset either and neither did i).

(5) Blocked my medical license renewal after DHS union lawyer on medical board State Board of Osteopathic Examiners (OSBOE) publicly reprimanded me (despite no complaint from any patients nor citizens) and forwarded that to National Practitioner Data Bank ("NPDB"), forcing closure of my private practice and ending life-long career of medicine after 14 years of expertise experience in high risk patients yet extremely high praises and no malpractice lawsuits;

(6) Placed liens on my landlord's rental residence for alleged attorney fees owed by ex-husband Adam to Mr. Gilbert Pilkington Jr.--an attorney i have never hired nor ever agreed to pay to, is a clear injustice and legal abuse especially when i have been forced to self-represent throughout these proceedings when English is my second language and my exhusband is American born here and fourteen years older than me he can represent himself fine in his relitigation of our finalized divorce he did not have to hire an attorney; this caused unnecessary stress in my relationship with my current husband of eight year marriage and with his landlord; the fact that i had court-appointed attorney provided at no cost to me (being financially indigent) during contempts of court hearings for child support showed that i should NOT pay legal fees for myself nor for anyone else and especially not for the prosecutors;

(7) For the past three years, i have been denied the ability to choose a therapist or supervisor

for visitation. i have been restricted to only 30 hours of visitation with my daughter due to the

court-appointed therapist, Amanda Hall (HALL'S ANCHOR OF HOPE), who requires costly

prepayments of $150 per hour for therapeutic supervised visits that are not medically

indicated, while visitation-supervisor Cheryl Hall (FAMILY VISITATION & SOLUTIONS)

also refuses to accept insurance or credit cards, only allowing cash payments (e.g., Apple

Cash), despite my financial situation where i have no money left in my accounts and rely

solely on credit cards and borrowing from friends and relatives for daily needs. Additionally,

court orders have prohibited any phone or video calls between me and my daughter,

accompanied by threats of imprisonment, while overruled my objections and my dissent.

23. The baseless allegations and the unjust substantiation of abuse against me by Oklahoma DHS

and court actors without due process or a jury of my peers (Vietnamese immigrant), have

caused irreparable harm to me and to my whole extended family: loss of consortium and

family relations with my daughter who is my "biological property/offspring/happiness" per

legal definition and my "gift and heritage from the Lord" per my religious definition, loss of

my reputation via defamations, loss of lifelong career of medicine, deterioration of my health

(headaches, vision changes, weight loss, diseases, etc.), significant mental anguish and

emotional distress, disruptions of peace and privacy by governmental overreach, permanent

closure of my small private direct primary care clinic (Peace Joy Clinic PLLC), loss of

precious time, loss of freedom to travel to free speech, opportunistic financial investments

loss, unnecessary tax penalty for unconsented early-seizure-of-retirement-at-age-forty as i

have not retired, loss of all future earnings as a primary care doctor, false imprisonment of

two month sentence (cruel and unusual punishment), ongoing and constant harassments with

debt collection efforts and constant threats of recurrent incarcerations, being summoned to courts monthly on average.

**DETAILED TIMELINE**:

24. Plaintiff Linh Tran Stephens was born in 1984, in Viet Nam of Asia continent (NOT born in Washington D.C.) and naturalized as an American at age 12 (not a U.S. Citizen and has never resided nor domiciled in Washington D.C.).

25. May 17, 2012: i, Linh Tran Stephens ("*Mother/Linh/Plaintiff*" herein) married Adam Sylvester Stephens ("*Adam/Father*" herein) in Maricopa County, Republic State of Arizona. At the time, i was serving as an active duty officer in the U.S. Navy Medical Corps. i served for five (5) years and was honorably discharged in 2015, having received multiple commendations during service. Upon my first marriage to Adam and his fifth marriage to me, i was 28 years old and he was 42 (14 years age difference). How we met: Adam located my profile on Facebook and sent me a friend request. In 2010, he orchestrated what seemed to be a chance meeting at a Starbucks, where he presented himself with a "cute puppy." Following this encounter, he actively pursued me for approximately one year. i had no prior experience with law enforcement or the legal system, and i was completely unaware of the abusive dynamics that would unfold.

26. Abuses began post-honeymoon, including physical, emotional, and financial abuse. Adam accumulated over $100,000 in credit card debt charged to my name (proof available upon request with credit history). After the divorce private investigator of a nonprofit showed that Adam was irresponsible and frivolous with money and prior to our marriage had *four* bankruptcies, many defaulted student loans, unpaid child supports, many legal infringements and stolen valor (proof made available to all courts and will be available upon request

anytime). Examples of physical abuse: Adam punched my face and missed thus hit the wall, unconsented sex, screamed and cursed at me until my ears rang, kicked our dogs, drove our car into oncoming traffic if he didn't get his ways, falsely accused me daily of sleeping with every coworker and every man walking by, emotionally cheated on me by texting other women as i caught him, etc.

27. July 2013: Birth of our daughter, G___ L____ Stephens ("G.L.Stephens" herein), the first child of my first marriage and Adam's seventh child from his fifth marriage.

28. On and Off Separation: i intermittently separated from Adam in hopes of his behavioral changes particularly regarding his anger and refusal to adhere to psychiatric counseling for delusions, hallucinations, and anger outbursts.

29. January 08, 2016: The divorce was finalized in Columbia County, republic of Oregon, establishing custody agreement of "*50/50 joint legal and physical custody*" and "unhampered access to child for both parties" per the Oregon divorce decree/court-order/the-only-binding-valid-written contract between us; the decree stipulated, "*Jeep and Trailer [from Linh to Adam] in lieu of child support [until child ages out]*." The finalized divorce decree was titled "*Stipulated General Judgment of Dissolution of Marriage; and Money Award (Co-Plaintiffs)*" (the "*Contract*" herein) officially executed on 08 JAN 2016 in the "Circuit court of the State of Oregon for the County of Columbia, Department of Domestic Relations, case No. 15DR18623, Judge Cathleen B. Callahan."

30. July 11, 2017: After i faced repeated custodial interferences from Adam, who kidnapped young woman G.L.Stephens for four months, Tulsa Police ill-advised me to seek intervention from the Tulsa Courts, alleging that Tulsa Police do not enforce divorce decrees finalized in other states e.g. Oregon, even if residency is established and driver's licenses of Oklahoma

were already obtained. i requested the Tulsa Oklahoma court for enforcement of the custody terms.

31. In mid-November 2021: my then 8 year-old daughter, G.L.Stephens, tearfully disclosed to me and other relatives that Adam choked her dog, Gizmo, nearly to death in front of her. Attempting to intervene, she hit his arms. G.L.Stephens expressed fear for her own life, worried she'd suffer the same fate. She felt compelled to visit Adam's home to protect her dog. She further disclosed that Adam "attempted to choke their cat but was unable to do so because the cat has sharp claws and ran away." Prior to this, Adam's escalating abuse included throwing and kicking dogs, behaviors G.L.Stephens began mimicking until corrected. The GAL was informed but remained indifferent. G.L.Stephens further detailed Adam's escalating physical abuse, including forceful slaps to her head and body, distinct from earlier spankings or belt beatings. Despite prior "Conduct Order," (see top half of page 8 above), Adam continued to force G.L.Stephens to sleep naked with him, though less frequently, causing her to forget to disclose this unless directly asked. Evidence (recordings, pictures, videos, diary entries) has been provided to OKDHS and the courts and is available upon request, with some accessible online: **https://tinyurl.com/4cdv5u56 or https://drive.google.com/drive/u/0/mobile/folders/14l4cntRRl8op1tJkttvus7pdbAr9BBf M**

32. On 11/23/2021: i filed police reports in Owasso (Report # 2021-2553, Rogers County) and Tulsa (Report # 2021-060000, Tulsa County) regarding Adam's abuse of G.L.Stephens and her pets. i was referred by a Tulsa police officer named Keoshia Savage to D.V.I.S. Family Safety Center ("Domestic Violence Intervention Services") to file a Protective Order against my ex-husband (case # PO-2021-3843), which was signed by Judge Julie Doss on November

24, 2021. i was advised by the Protective Order Advocate, Gory, to bring G.L.Stephens to testify at the upcoming hearing scheduled for December 08, 2021, citing precedent for younger children, even five year olds, and noting G.L.Stephens's intellectual brightness and articulation at age 8.5 year-old making straight A's in private school. Bailiff Amira El Hassan confirmed Dr. Jim Lovett's virtual testimony and G.L.Stephens's in-person or virtual testimony were permissible (via video (Microsoft Teams); i was instructed to keep the original diary, as the judge already possessed a copy detailing the abuse.

33. On 11/29/2021: i filed a DHS referral (# 2199067). To file its required Motion for Emergency Custody, i retained attorneys Erica Parks (Bar #20532) and her partner Dale Warner (Bar #9359) using borrowed funds of $5,000 for retainer fee from relatives. Despite my repeated urgent requests for immediate action and a provided timeline, these attorneys delayed filing; even after they drafted the Motion and proposed Order, they have never filed them, but appeared to collude with Guardian ad Litem ("GAL") Stephen E. Hale, resulting in my daughter being removed from my protective order and custody. This was facilitated by the involvement of a felon, Bridget O'Brien (also known as Bridget Menser), who works for DHS CPS. O'Brien has a criminal history, including a felony conviction in Tulsa County case # CF-1999-2911 for selling alcohol to minors; she also has multiple speeding tickets, and a history of bankruptcy.

ABRUPT DHS REMOVAL AND SYSTEMIC FRAUDS:

34. December 1-2, 2021 events keynotes: Eight-year-old G.L.Stephens denied DHS worker Bridget's fabricated claims about fearing mother; G.L.Stephens expressed to school director strong bond with mother; At neighbor Jeri Townsend's home, G.L.Stephens shared plans to testify about father's abuse, questioned GAL Stephen Hale's failure to protect her, and

expressed fear of father potentially killing other family members:

On 12/01/2021, DHS worker/felon Bridget O'Brien ("*CW*" from now on) came to my house pretending to investigate Adam but refused to document anything i reported, refused to take any evidence submitted, refused to call any witnesses including my current husband, while being dismissive of all my raised concerns or G.L.Stephens's written concerns, refused to interview G.L.Stephens and i together for our loving interactions, but biasedly insisted in interviewing G.L.Stephens and Adam together without any video recording (required for analysis by child experts). Bridget O'brien refused to review G.L.Stephens's diary, falsely claiming it was fabricated, despite evidence of G.L.Stephens writing it herself (video evidence, psychologist confirmation, school director testimony, teacher handwriting comparison) and its inclusion of positive entries. The school even submitted the diary to the court on G.L.Stephens's behalf (Court Minute Order 06-23-2021), but it was returned after being read alleging "ex parte communication" which courts violated all the time previously: "*06-23-2021 DOCKET C: THE COURT RECEIVED AFFIDAVITS FROM THIRD PARTIES; THE COURT DID NOT READ THE AFFIDAVITS AS IT WOULD BE EX PARTE COMMUNICATION; DOCUMENTS RETURNED TO SENDER, "M.H.P.S.";*"

Caseworker Bridget O'Brien misrepresented her visit in her report regarding my younger son, stating both in court and during a CPS safety meeting that my second child's living environment lacked essential items such as a bed, toys, and clothing–pictures of truth contrary to her lies are available upon request. She refused to interview any witnesses that i and my attorneys provided, including child psychologist Jim Lovett, school director Jayme Wingo-Martin, teacher Susie Panzer, former DHS investigator Maria Chico, and neighbor Jeri Townsend, who G.L.Stephens trusted and confided in regarding her father's abusive

behavior and other concerning incidents.

Despite repeated requests from me and the child advocacy center, Muskogee Kids Space, Bridget O'Brien and OKDHS and court actors declined to initiate a forensic interview and violated DHS/child safety protocols by refusing to: (1) activate a forensic interview, (2) allow medical exam with both parents present for sexual abuse allegations, (3) contact the FBI for alleged child-porn, (4) notification to both parents PRIOR to child removal from school ground, (5) obtain a warrant for removal of child from mother's protective order and custody, (6) disregard hearsays and testimony from convicted felons, (7) record what child disclosed at school when mother not being notified nor consented prior to interview, (8) provide kinship paperwork or kinship placement to mother, (9) hold an evidentiary hearing (none have been conducted in Juvenile Court to date, and the case was closed due to allegedly "the lack of objections from me or my attorneys"–this is utterly untrue and strictly frauds-upon-the-court committed by court actors against me as i have testified numerous times and again today, (10) child's right to testify despite age-appropriate capacity with GAL and DHS refused to subpoena child, (11) release DHS records to both parents, (12) facilitate reunification efforts. There has been no contact allowed between G.L.Stephens and me despite our numerous requests for phone calls, video calls, or visits, unless i paid exorbitant fees of $150 per hour for supervised visits, with restricted freedom of speech and freedom of religion (Jesus and Bible were forbidden).

When my attorney confronted O'Brien with evidence that the Netflix film Taken was not in my possession and clarified that it is PG-13 without any "rape scenes" as alleged, O'Brien altered her allegations to include claims of "adult porn" during a Juvenile Court hearing on December 07, 2021. Upon further confrontation using evidence proving i lacked cable

television access, she changed her statements again during a CPS safety meeting on December 08, 2021, claiming i had shown my daughter child pornography based on "other additional interviews with the child"—without presenting any corroborating evidence/documentation. This raises concerns about why a caseworker who claimed to be "too busy and overworked" had numerous interactions with my daughter when only one interview should have been necessary, delegating further inquiries to child-experts. Additionally, i noted a potential conflict of interest as O'Brien was frequently seen hanging out with Adam, my ex-husband. When i offered O'Brien my devices for review, she refused, stating, "I KNOW YOU'RE GUILTY JUST BY LOOKING AT YOU!" This statement is documented in the court transcript as later, during the June 01, 2022 court hearing [available upon request], she admitted to not reviewing any of my devices, indicating her assertions relied solely on hearsay claims from the child, which are inadmissible and unverified by any neutral parties. Both the Guardian ad Litem, Stephen E. Hale, and caseworker Bridget O'Brien appear to have financial incentives to provide testimony against me that contradicts the truth: G.L.Stephens's consistent statements and expressions of affection towards me, which have been articulated to numerous witnesses and documented in her artwork, journals, and recorded songs on her iPad; these include declarations such as, *"Mommy is the best mommy in the whole wide world; I love mommy 100%; I want to stay with mommy forever; I never want to see daddy again; daddy lied to me all the time; daddy is angry all the time; daddy made me sleep naked with him; daddy beats me…"*

Later that day, on 12/01/2021, after G.L.Stephens, eight years old, returned from school, i informed her, "Bridget told me you told her I forced you to watch scary movies and that you're scared of me, wanting to live with Daddy and never see Mommy again."

G.L.Stephens, visibly upset, replied, "What! I didn't say that! I told her about Dad choking my dog, and she just said 'oh.' She promised to help me with 'meanie daddy.' Why does Bridget lie?" i told her, "I don't know, honey, but continue to speak your truth, and God shall judge her."

The next day, 12/02/2021, during pick-up at Miss Helen's Private School, i overheard G.L.Stephens telling her school director Jayme Wingo-Martin, "I'm almost Mommy's size; look, we're twins! She's the best mommy in the whole world..." That evening, during dinner with our neighbor Jeri Townsend, G.L.Stephens expressed her excitement about speaking to the judge next Wednesday regarding her father's behavior, hoping for rescue from him. She questioned why Stephen E. Hale hadn't saved her as he promised her. G.L.Stephens showed Jeri Townsend her personal diary, highlighting plans to present it in court. As we drove home from our neighbor Jeri Townsend's house, G.L.Stephens said, "If you and step-dad ever die, and if Grandma dies too, I want to live with Jeri!" while explaining she was afraid of us being killed by Adam, her father.

35. On Friday, 12/03/2021, around 6 P.M. -- DHS REMOVAL WITHOUT WARRANT: G.L.Stephens was taken by DHS from school to a foster home without the chance to say goodbye to me. This decision by Judge Theresa Dreiling was based on hearsay from caseworker Bridget, who has a felony record. No forensic interview or medical examination was conducted to assess possible sexual abuse by her father, and no kinship placements were arranged, despite the availability of extensive relatives in Oklahoma and Texas, a supportive church community, and a tightly-knit neighborhood with many foster parents friends. No reunification efforts were made. Despite G.L.Stephens's capacity to provide reliable testimony, the lawyers refused to let her on the stand even after she was subpoenaed

numerous times properly with the seal of the court. The Guardian ad Litem and DHS also refused to call her to the stand, ignoring my repeated demands for her involvement. Additionally, the entire DHS department, including its legal team—Leah Sukovaty, Taylor Hendricks, Jessica Martin, Laurie Anne Morris, Deborah L. Eddingfield, Lynnette McKelvey, Jennifer Fullerton, Jerica Carmichael, Tricia Howell, Dr. Deborah Shropshire (who was replaced by Jeffrey Cartmell on August 28, 2024), Pegi Haddock, Kimberly Jantz, Larisa Grecu-Radu, and Ronald Baze—has denied my requests for access to DHS records.

SYSTEMATIC DENIAL OF CHILD PROTECTION AND OF DUE PROCESS:

36. On morning of 12/08/2021 - Protective Order Dismissal: G.L.Stephens's protective order against her father (case No. PO-2021-3843) was unjustly dismissed by Judge Julie Doss, without allowing young woman G.L.Stephens to testify, without proper representation for me (my attorney Erica Parks and Dale Warner falsely claimed "no objection"), without any due process considerations. The evidence of these malpractice events available upon request. Minute Order stated, "12-08-2021 JUDGE JULIE C DOSS:PLAINTIFF [Linh] NOT PRESENT, REPRESENTED BY ERICA PARKS, PRESENT, DEFENDANT [Adam] NOT PRESENT, REPRESENTED BY GIL PILKINGTON, PRESENT, EMERGENCY PROTECTIVE ORDER CONTINUED AND SET FOR 12/20/2021 AT 9:00AM JUDGE SPARKMAN . SEE PO 21 3843 AND FD 15-2228 ORDER OF CONSOLIDATION SIGNED AND ENTERED. FOR BLUE JEAN VIDEO INSTRUCTIONS, SEE CONDITION 11 SEE JD 21-270, *G.L.Stephens LINH STEPHENS WAS REMOVED FROM THIS EMERGENCY PROTECTIVE ORDER.*"

37. On afternoon of 12/08/2021 - Ex Parte Custody Transfer: a "secret" meeting ("undisclosed hearing") was held without proper notice to me; this meeting involved DHS caseworker

Bridget O'Brien, state attorney Kimberly Jantz, and JUDGE OF TULSA COUNTY

JUVENILE CENTER Martha Rupp Carter (supervised by Judge Kevin Gray). i was not

notified of this meeting, nor were my attorneys present to object, as they alleged they were

not informed of its occurrence. There was no court reporter present for this significant

meeting, which raised concerns to me about potential concealment of judicial misconduct.

Minute order falsely claimed, "*there are no objections by the parties for the proposed release*

*of the children from emergency custody... IT IS FURTHER ORDERED that the above-named*

*children be released to Adam Stephens, natural father, without DHS supervision.*" This marks

a second instance of FRAUD ON THE COURT. i was deceived by attorneys into believing

this hearing never occurred and that i would have a future opportunity to object. That

opportunity never materialized. Its outcome: Immediate custody transfer to perjurious,

unsafe, unfit father without DHS supervision nor Dr. Lovett's supervision.

38. On 12/10/2021 – LAW ENFORCEMENT OBSTRUCTION: Owasso Detective Penny

Hamrick finally met with me regarding police report #2021-2553, filed on November 23,

2021, after previously ignoring my calls and emails. Detective Hamrick denied my request

for a referral to Muskogee Kids Space for my daughter's forensic interview and forensic

medical exam, refused to accept evidence including G.L.Stephens's diary, treated protective

parent as a perpetrator and vice versa, and attempted to coerce me into taking a lie detector

test while denying the same request to Adam.

39. On 12/14/2021 - RETALIATORY PROTECTIVE ORDER: Adam filed a fraudulent and

perjurious Protective Order (PO-2021-4509) against me, falsely accusing me (a traditional

Vietnamese devoted Christian female) of "watching child porn with young woman

G.L.Stephens" and "kidnapping young woman G.L.Stephens from school." These claims are

contrary to evidence from the school, including camera footage and testimony from school director Jayme Wingo-Martin, as well as device clearance by private investigator David Ballard using an FBI-grade scanner. All evidence has confirmed my innocence and demonstrated Adam's pattern of PERJURY AND FALSE POLICE REPORTS, with actionable charges not pursued by colluding law enforcement and by judges despite my demands. Nonetheless, Judge Julie Doss, who had previously approved a Protective Order for my daughter, son, and me based on credible affidavits and evidence against my ex-husband, now granted a protective order to Adam against me with unbelievable affidavit and hearsay testimony. In summary, Judge Doss facilitated a reversal of the narrative to protect a known abuser while maliciously prosecuting the victim of abuse. Court Minute Order stated, "*12-14-2021 JUDGE JULIE C DOSS:* UPON SWORN AFFIDAVIT, *THE EMERGENCY PROTECTIVE ORDER GRANTED FOR SELF [Adam], AND CHILD...*" There was no cross-examination or sworn testimony, no proper service to me; instead, Adam's obviously fabricated hearsay affidavit was accepted as absolute truth without further verification.

40. On 12/17/2021 - Ex Parte Emergency Order [ex parte only allowed for Adam but never for me]: Adam applied for an Emergency Custody Order hearing, which Special Judge Rodney Sparkman signed without any argument, evidence, reliable witnesses, or cross-examination presented, and without a jury trial of my peers the alleged Defendant of "abusing young woman G.L.Stephens". Special Judge Rodney Sparkman had previously worked for DHS for decades and failed to disclose this.

41. On 12/20/2021, during a virtual emergency custody hearing, i was wrongfully designated as the abuser while my ex-husband Adam was improperly depicted as a safe parent, despite his

extensive history of children' abuses and mental health diagnoses. Since that time, i have filed multiple motions and requests for jury trials under common law and article three courts regarding the custody and welfare of G.L.Stephens, all of which the courts have ignored or blocked. Additionally, i discovered that the public defender Sadie Temple and Meagan Beck assigned to my daughter did not act on significant evidence related to her being unsafe with Adam and being safe with me and extensive relatives.

42. PROCEDURAL MALFEASANCE & LEGAL MALPRACTICE, NEGLIGENCE, DENIAL OF RIGHTS: Since then, i faced several delays in court hearings, and vital procedural rights were denied, including adequate representation and the opportunity to present my case. My attorneys and my daughter's public defenders not only failed but refused to present key evidence in our favor during hearings; subsequent investigations revealed that critical hearings were waived without my consent.

43. On 03/21/2022: During a hearing with my new attorney, Chandler Moxley, Judge April Seibert violated Americans with Disabilities Act ("ADA") by requiring my disability diagnoses to be stated aloud in open court, These diagnoses had been emailed to the ADA coordinator weeks prior. My ADA advocate this hearing was Ms. Melissa Vagle (other times, Francesca Amato or Marieke Randoy), who requested a private breakout room with the judge, which Judge Seibert denied, insisting the diagnoses be spoken out loud in public to embarrass me and to violate my privacy, then kicked her out of the hearing. The judge subsequently retaliated for ADA requests by ordering psychological evaluation based on the actions of others: Judge stated that i must be crazy because my ADA advocates sent "too many" correspondences to the ADA Coordinator, Vicki Cox, requesting accommodations for me. These ADA requests were ignored by ADA coordinators, even after complying with her

demand for official medical doctor's note. (See the March 21, 2022, transcript, page 4, line 19 to page 5, line 17, and page 10, line 17 to page 11, line 5). All judges excluded my advocates from participating virtually while allowing opposing parties and other individuals to appear in the same hearings. This occurred despite the approval of ADA accommodations for me, which existed solely on paper to fraudulently secure federal funding for services that were not actually provided by Oklahoma.

Furthermore, Ms. Sadie Temple emotionally and mentally abused my daughter and endangered her by recommending zero contact with me, despite my being her primary caretaker since birth. Ms. Temple irresponsibly advocated for full contact with Adam, despite documented evidence of his abuse were all emailed to both her and Marci Jefferson, which they both ignored. She perjured herself in court [see transcript page 6) by stating, "*whether or not her [G.L.Stephens] preference is totally voluntary, I -- I don't -- I can't comment on that. All I can do is advocate for the preference that she's expressed to me. So based on that preference, my -- my first request would be no contact with mom.*". These are false statements because young lady G.L.Stephens would never say she never wants to see me again, even under duress. G.L.Stephens is intelligent and capable of expressing her wishes, and i repeatedly requested that she be allowed to speak for herself in court, but this request was denied. Evidence, including G.L.Stephens's artwork, personal diary, homework, handwriting samples, school projects, songs recorded by G.L.Stephens on her iPad, and testimonies from various corroborating witnesses, supports her affection and safety with me, as "the best mother in the whole wide world." These materials are available upon request.

Following the hearing, i instructed my BAR CARD ATTORNEY Chandler Moxley to demand the dismissal of the Department of Human Services (DHS) case as more than 90 days

had passed without substantiation of abuse. i notified DHS caseworker Bridget O'brien and her supervisor Leah Sukovaty, and DHS attorney Larisa Grecu-Radu of this legal requirement via email. Despite this notification and the clear language of Oklahoma law quoted, they refused to dismiss the case against me. Oklahoma's Juvenile Bench Book (p. 124) stated, "*The hearing must be held within ninety (90) calendar days following the filing of the petition. If not held within this time frame, the child must be released from emergency custody. If an adjudication hearing is not conducted within this time frame, the emergency custody order expires and the child is released from emergency custody.*"

44. Despite numerous hearings before Special Judge April Seibert, no resolution nor justice was achieved. She repeatedly violated child's right to testify, my American Disability Act ("*ADA*") rights, due process rights, constitutional rights, human rights, equality rights, trust laws, contract laws, dismissing all my objections/appeals/notices/reconsiderations, and denying my in forma pauperis status despite documented financial hardship.

45. On 05/18/2022: Owasso Police and Rogers County District Attorney Office (see long list of Imposters/Wrong-doers) issued two (2) false arrest warrants against me to protect Adam under judge Lara M. Russell based on unsubstantiated protective order PO-2021-4509, leading to my two arrests and subsequent and two-year legal battle that ultimately resulted in dismissals of both defamatory charges of violating protective orders, with their numerous court dates that disrupted my peace and my ability to work.

46. My repeated requests for court records were met with delays and incomplete responses, claiming no transcripts were made for critical hearings, undisclosed emergency custody release, lack of proper documentation/transparency, specifically on 05/25/2022 at 8:31 AM, i finally received an email in response to my persistent records-request for the last 1.5 years of

juvenile court, stating, "*Judge Dreiling approved your request. Here is the docket with the
minutes and the orders of the hearing. Filing announcement did not happen due to ORDER
RELEASING CHILD(REN) FROM EMERGENCY CUSTODY. A court reporter was never
requested, so no transcripts were made.*" The prior email i sent on May 13, 2022, at 3:06 PM
to Allen.Woodworth@oscn.net was with the subject line, "[EXTERNAL]: Expedited
transcripts requests for JD-2021-270 both 12/07/21 and 12/08/21", and body of the email
said,"*Good afternoon, I would like to have an expedited order of transcripts for all
JD-2021-270 hearings on 12/07/21 and 12/08/21 and any other hearings I wasn't made
aware of. Thank you so much, and may God bless you with health and happiness! Sincerely,
Linh Stephens, D.O.*"

47. Numerous hearings took place, but a particularly significant one occurred during the recusal
hearing of Special Judge April Seibert on 12/22/2022, significant evidence of two-inch thick
binder and a USB drive with voice recordings and recorded videos were all admitted as
evidence. Additionally, during a Pretrial hearing on 01/18/2024 at 9:00 AM, another
substantial binder and USB drive were exchanged and offered into evidence but were
unjustly precluded. Some evidence and affidavits are available at
https://tinyurl.com/4cdv5u56 more available upon requests.

48. On 09/08/2023: the first therapeutic supervised visit occurred nearly ten months later after
numerous motions and hearings, but only with a therapist i didn't choose, Amanda Hall. My
three choices of other therapists i requested were denied without any lawful reason).
Subsequently, an additional supervisor, Cheryl Hall, was assigned, which I did not choose.
The judge continually denied my request for Jim Lovett to continue therapy for
G.L.Stephens, despite him having been relocated back to Tulsa, Oklahoma after a brief

period visiting Georgia.

49. On 01/26/2024: GAL Stephen E. Hale submitted false and damaging reports dated January 26, 2024, against me, favoring the father. i received these reports only four (4) days prior to the trial, leaving me insufficient time to prepare adequately.

50. On 01/31/2024: a five-day bench trial in front of Special Judge April Seibert commenced against what i demanded–i demanded "a trial in front of 12 peers of mine (thus second generation Asian American family physicians) in common law court under article three court, with observation by an article three court NONspecial judge federal judge". During this fraudulent bench trial overruling my objections threatening defaulted judgment if i don't show up, i was ordered to have only 10 hours to testify (with a countdown clock by a special judge which i objected to repeatedly pretrial, during trial, and post trial), to present witnesses, to cross-examine all witnesses regarding all topics of custody, child support, and 10 contempt filings, defense against five (5) contempt allegations, while all other parties had the remainder of the time and plenty of court days prior to trial. OUTCOME: All contempt charges against me were substantiated, while all charges against Adam were dismissed without due process, without impartiality.

51. I have NEVER agreed to a restraining order with Adam, contrary to April Seibert's allegation. I have proof of my objection. I also did not agree to my signature being waived. This is significant because Adam previously filed a false Protective Order (PO), and later Adam Sylvester Stephens admitted under oath that he committed perjury on the police report and lied under oath further that he is unaware that perjury was a crime despite acknowledging his law enforcement background and dismissal from police force due to anger issues (available on transcript in courts). Two false Violations of Protective Orders (VPO)

against me were eventually dismissed after 2 years of legal abuse by the Defendants.

Regarding the subsequently alleged 'Mutual Civil Restraining Order' from October 30-31,

2023, Gilbert Pilkington, opposing counsel, fraudulently filed it as "*MUTUAL CIVIL

RESTRAINING ORDER Document Available (#1056644528)" without* my signature or

consent to waive it. Following this, the "**10-31-2023 Plaintiff'S SIGNATURE PAGE &

STIPULATION OF MUTUAL CIVIL RESTRAINING ORDER**" shows that instead of

signing, I submitted a formal OBJECTION before opposing counsel's filing, where he falsely

claimed "waiving of [my] signature by Court" Document Available (#1056657475) – see

**Exhibit #3 of my actual documents and his fraud-upon-the-court filing!**

52. i state under OATH and will state under oath in a judicial setting or otherwise that (1) i am

NOT nor have i ever been an "absent Father" whose child required Federal or state funded

welfare assistance because of his absence and parental power was neither lost through any

fault of his own. (2) there is no evidence out there and there was no evidence presented at the

time of the *alleged* initial support-orders 10/17/2022 and 02/20/2024 [*duplicated orders

violating judicial estoppel, res judicata, nisi prius, and stare decisis of binding finalized child

support order 01/10/2016 in Columbia County, state of Oregon between Adam and i*] or at

the time of any request for application of services by the custodial parent named in the

account that i was an "absent Father" whose child required Federal or state funded welfare

assistance because of my absence. (3) i have always been a non-Absent Mother, still am, and

forever will be a non-Absent Mother. (4) i declare not to be subject to restraints not shared by

the public generally *(See Jones v Cunningham)*. There has never been a motion to modify

child support in Oklahoma, filed by either the ex-husband or the Plaintiff, nor has the

Plaintiff ever consented to or signed any such motion. Some evidence and affidavits are

available at **https://tinyurl.com/4cdv5u56** and more is available upon request.

53. On 02/20/2024: an unjust and unconstitutional duplicated child support order was issued by Special Judge April Seibert, ordering me to pay $2,360.24/month.

54. May 2024: OKDHS billed me *$2,360.24/month and illegally seized $64,445.92 from my 401(k) retirement account @ my age of 40, despite my non-retirement status*. These accounts, earned during my employment with Cherokee Nation from August 2018 to September 2020 and during a subsequent marriage, are federally protected from child support garnishment. My judicial notices, objections, and motion to change venue to federal court article three court, etc, were disregarded by the judges, court actors, bank BAR CARD ATTORNEY Mary Johnmeyer, and OKDHS CSS employees. This seizure of ERISA funds occurred in front of Administrative Special Judge Robert Perugino on May 08, 2024, during the Office of Administrative Hearing. It is important to note that my divorce was finalized in January 2016, long before the establishment of that 401(k). The 401(k) was liquidated, as indicated in a bank-email dated May 07, 2024, which was one day before the scheduled DHS liquidation of 401(k) hearing.

55. On 02/06/2024-02/07/2024: a six-membered jury trial was held regarding contempt of court for my inability to pay child support in front of Special Judge Deborrah Ludi-Leitch (who will be succeeded by Loretta Radford). Jury trial resulted in a guilty verdict against me, sentencing me to 60 DAYS IN JAIL and a purging fee of $12,913.40 IN CASH BOND, while ignoring my inability to pay and prior affirmations of indigent status. The trial included numerous procedural errors and a deprivation of rights. Special Judge Deborrah Ludi-Leitch denied my request to serve my sentence on weekends—i wanted to work on weekdays to pay alleged fines, fees, and debts—thereby causing my direct primary care clinic to close

permanently. This punished me in a cruel and unusual manner, and destroyed my business.
Pretrial, during trial, and posttrial, the courts repeatedly denied my requests to invoke a Rule
8 Hearing regarding my inability to pay and to present evidence of fraud and misconduct
regarding an unconstitutional child support order that was issued and requiring me to pay
support despite my financial circumstances being extensively documented and despite i did
not meet any criteria to be subjected to title IV assignment or enforcement.

56. 03/07/2024: Minute Order stated, "PRESIDING SPECIAL JUDGE DAWN MOODY:
COURT RECEIVES MOTION [from jail]. NO ACTION TAKEN - IMPROPER
PLEADING." "03-12-2024 JUDGE WILMA PALMER FOR FD DOCKET F: ORDER OF
THE COURT, FEBRUARY 7, 2024, ENTERED." i endured cruel and unusual punishment
while serving my sentence in jail due to my inability to post bond.

57. These Special Judges purposefully delayed the entry of court order for 02/07/2024 hearing
until 03/13/2024, preventing my appeal from being initiated and resulted in my prolonged
sufferings.

58. On 12/31/2024: i received a letter from Passport-CRBA-Notification@state.gov regarding
the revocation of my passport and told me no available means to appeal except through DHS
CSS.

59. On 09/30/2024: Oklahoma Supreme Court Justices improperly and permanently revoked my
in forma pauperis status in the "Mandamus for Recusal" case # MA-122445, without legal
justification or supporting evidence. This action effectively denied my constitutional rights to
court access and my ability to seek redress against government abusive actions. The justices
disregarded my judicial notice concerning how this arbitrary revocation violated my rights
and established Supreme Court precedents that protect the fundamental rights of financially

indigent litigants to meaningful court access, irrespective of financial status. Subsequently, on 02/13/2025, i filed in the same superior court for a Writ of Mandamus for the Oklahoma State Bureau of Investigation (OSBI) to investigate the abuses of my daughter (16 pages + All evidence attached 152 pages); however, i was met with an unconstitutional sealing of the mandamus and its evidence from public eyes, and an unconstitutional and obstructive Minute Order on the same date 02/13/2025, stating that the mandamus would be dismissed for lack of payment "by February 8, 2025" which was seven days prior to the court order that has not properly served to me.

60. On 05/02/2025, Special Judge Loretta Radford a/k/a LORETTA RADFORD proceeded with proceedings of double jeopardy (unconstitutional) despite the existence of a contested jurisdictional challenge, a pending removal to federal court, and an ongoing appeal in Oklahoma Supreme Court regarding a prior same conviction. Ms. Radford denied the demand for a stay of proceedings notwithstanding these properly raised jurisdictional challenges and pending appeals. During these proceedings, Special Judge Radford granted remote virtual participation to the opposing party (ex-husband) and his legal counsel while simultaneously denying the same virtual access to the defendant, thereby creating disparate treatment. ADA advocates and authorized court observers were barred from virtual attendance at public hearings concerning the entity bearing a similar name to Plaintiff (though distinguished by capitalization), while representatives from the State and opposing counsel's team were permitted online access. Individuals attempting in-person court observation were threatened with arrest by Special Judge Radford and Tulsa County District Court Sheriff Jacob R Williamson. Despite verified financial indigency and repeatedly affirmed indigency both by Oklahoma Supreme Court and Federal Courts, Special Judge

Radford issued a default bench ruling against the defendant based solely on inability to pay $350 in jury trial fees. When the defendant offered to pay a $20 court reporter fee by credit card, with confirmation of available funds from her advocates, the court and the filing clerk and administrative clerk (the assistance of Kim Hall who refused to give her name to the advocate) refused to accept this payment and refused to have a court reporter in the room. The court declined to address pretrial issues raised, including jurisdictional challenges and assertions regarding consent to state court proceedings despite being foreign national of VIET NAM country in the ASIA continent (not in Washington D.C.). According to court watchers, a week or so later, Special Judge Radford subsequently *fraudulently* and *maliciously* alleged the defendant (Plaintiff in this federal habeas) was a "no-show" after preventing attendance at the hearing virtually (since Plaintiff moved to South Carolina and cannot afford a car she appeared virtually), then issued a **default bench conviction** with a six-month jail sentence (see **Exhibit #4** the affidavit of bystander neutral court watcher first-hand witness, redacted for her safety). The court attempted to re-prosecute identical contempt charges after the Plaintiff was wrongfully seized without a valid/constitutional warrant and already completed a full 60-day sentence imposed by previous Special Judge the predecessor Deborrah Ludi-Leitch a/k/a DEBORRAH LUDILEITCH. State proceedings continued despite multiple pending federal cases addressing the same constitutional issues, and hearings were scheduled with knowledge that the underlying child support order conflicts with a binding Oregon decree and federal law.

61. <u>ONGOING ISSUES</u>: *i have proof of these claims, and evidence is available upon request, with some made accessible online*: **https://tinyurl.com/4cdv5u56** . i've experienced repeated discrimination and biased treatment in DHS and in court proceedings, including being denied

the opportunity to present evidence and call witnesses. The court has systematically *ignored*

my requests for due process, fair hearings and protection of my property, privacy, life, liberty,

and the pursuit of happiness. All of my repeated requests for reviews regarding worsening

financial conditions, reconsiderations, appeals, objections (to the waiving of my signatures

and rights, to special judges and magistrates), notices of harm, judicial notices, intent-to-sue

notices, and cease-and-desist letters on all issues have been unjustly denied by successors,

presiding Judges, the CWS Appeals Unit, the Oklahoma Supreme Court, the Oklahoma

Court of Civil Appeals, and the U.S. District Court for the Northern District of Oklahoma.

All court transcripts filed by the courts have been altered/tampered with by the courts or their

court reporters, or both, as compared to the original voice recordings available from court

observers or whistleblowers or Microsoft Teams videos (proof available upon request).

Official requests for voice recordings and all FOIA requests have been denied by court

reporters, the courts, and OKDHS. My requests under the Americans with Disabilities Act

have been unlawfully denied by the courts, despite being approved on paper. All complaints

submitted to Oklahoma Commission on Children and Youth, Oklahoma American Disability

Act Office, Oklahoma Bar Association, Oklahoma Council on Judicial Complaints, District

Attorney Office of Tulsa, Oklahoma Attorney General, Tulsa Grand Jury Office, Oklahoma

State Auditor & Inspector, City of Tulsa Mayor's Office, Tulsa County Commissioner

District 3 Office, Oklahoma Secretary of State Executive Legislative Services Division,

Oklahoma Senators, U.S. Rep. House Judiciary, U.S. Senator of Oklahoma, Governor of

Oklahoma, National Passport Center, STATE OF OKLAHOMA RISK MANAGEMENT

DEPARTMENT OFFICE OF MANAGEMENT & ENTERPRISE SERVICES have all been

ignored–except for Oklahoma House of Representative majority who ordered OSBI to

investigate OKDHS for my case among six egregious well-documented cases but OSBI unlawfully refused to investigate or act for safety of children.

IN SUMMARY:

62. G.L.Stephens was placed in the custody of Adam Sylvester Stephens, who has a documented history of child abuse. Specifically:

   ○ Defendant Stephens has substantiated cases of child abuse by DHS in Oregon state involving his 15-year-old female offspring

   ○ OKDHS whistleblower Maria Chico in Oklahoma documented substantiated abuse by Adam Sylvester Stephens; this CPS report and evidence was subsequently truncated/altered by an OKDHS supervisor in an apparent attempt to conceal Adam Sylvester Stephens' history of abuse

63. The placement of G.L.Stephens with a documented child abuser demonstrates the egregious nature of the state's actions and the immediate danger faced by the child in her current placement.

64. The actions leading to G.L.Stephens's removal lacked due process. Despite the established custody agreement, Defendants have conspired to undermine Plaintiff's rights, highlighting systemic failures that include:

   ○ Failure to join indispensable parties to the proceedings

   ○ Reliance on unverified allegations without any evidentiary support

   ○ Improper ex parte proceedings were conducted without adequate notice or opportunity to respond, and even after rebuttal, the case was unjustly moving forward even when appeals in state appeal courts were still pending.

- Public court watchers were threaten with arrest and intimidated by physical force and detainment (**see Exhibit #2**).

- Refusing to acknowledge dispositive DNA evidence that Plaintiff is NOT a deadbeat father.

- Sealing records to prevent Plaintiff and the demanding public court watchers from accessing evidence fraudulently submitted by Defendants contrary to actual truthful evidence.

- Suppressing evidence of Adam Sylvester Stephens' history of child abuse

- Placing the child with an individual with documented history of child abuse

65. Paternity DNA testing, which Plaintiff repeatedly demanded and which would have conclusively established the parent-child relationship, was deliberately obstructed by OKDHS and the STATE OF OKLAHOMA. This obstructive conduct highlights the absence of any lawful establishment of jurisdiction over the parent-child relationship under Oklahoma law, which is a prerequisite for imposing child support obligations and for the subsequent unconstitutional imprisonment of Plaintiff for inability to pay such fraudulently alleged debts. Plaintiff possesses substantial evidence demonstrating that this enforcement action falls completely outside the legitimate scope of Social Security Act Title IV provisions, which are specifically intended to target willfully non-supporting fathers, not a fit mother with a pre-existing custody agreement who has actively sought access to her child. The Defendants' defamatory assertions and characterization of Plaintiff as a "deadbeat father" directly contradict the Oregon decree establishing "Jeep and Trailer in lieu of child support" and violate principles of full faith and credit, comity, and res judicata while constituting fraud upon the court.

66. Plaintiff has made exhaustive and diligent efforts to challenge these unconstitutional actions through Oklahoma state courts, pursuing every available procedural avenue including:

   o   Multiple motions to vacate void orders pursuant to 12 O.S. § 1031 and § 1038, specifically identifying constitutional defects and jurisdictional failings as recognized in *Armstrong v. Manzo*, 380 U.S. 545 (1965) and *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)

   o   Formal requests for evidentiary hearings on jurisdictional challenges, supported by sworn affidavits and documentary evidence

   o   Detailed motions to unseal records containing exculpatory evidence and critical testimony, including the unaltered reports from OKDHS whistleblower Maria Chico documenting Adam Sylvester Stephens' history of child abuse

   o   Multiple appeals to the Oklahoma Court of Civil Appeals and Oklahoma Supreme Court challenging constitutional violations, all of which were summarily dismissed without addressing substantive due process claims

   o   Petitions for Writ of Mandamus (Case # MA-122445 for example) and Writ of Prohibition based on fraud upon the court and lack of subject matter jurisdiction as established in *United States v. McIntosh*, 833 F.3d 1163 (10th Cir. 2016)

   o   Formal judicial notices regarding violations of the Full Faith and Credit Clause in relation to the binding Oregon divorce decree

Each of these state court remedies has been systematically thwarted through procedural obstructions, arbitrary denials, and the scaling of critical evidence, demonstrating the complete failure of the state judicial system to provide meaningful review of these fundamental constitutional violations.

67. Despite these efforts, the Oklahoma judiciary has systematically denied Plaintiff meaningful review, summarily dismissing her pleadings without addressing the substantive constitutional issues. This pattern of obstruction demonstrates the futility of further state court proceedings and the necessity of federal intervention to vindicate clearly established constitutional rights.

68. **No meaningful hearing before a civilian Court of public Record has occurred prior to the removal of G.L.Stephens from Plaintiff's custody. Plaintiff is neither active duty military, in the Reserve, nor an employee of the State, therefore no specialized jurisdiction existed to bypass ordinary due process requirements for civilian proceedings.**

69. No explanation of the Nature of the Action was provided to Plaintiff prior to the removal of G.L.Stephens, violating the fundamental notice requirement under the Fourteenth Amendment's Due Process Clause as articulated in *Mathews v. Eldridge*, 424 U.S. 319 (1976).

70. No explanation of the Cause(s) of Action was communicated to Plaintiff prior to the removal of G.L.Stephens, depriving her of any opportunity to prepare a defense against specific allegations as required under *Goldberg v. Kelly*, 397 U.S. 254 (1970).

71. Plaintiff was denied effective assistance of counsel during critical stages of the proceedings. Her court-appointed attorneys failed to present exculpatory evidence, failed to object to procedural irregularities, waived hearings without Plaintiff's informed consent, and concealed vital information regarding ex parte proceedings. This systematic deprivation of meaningful representation violated Plaintiff's due process rights as recognized in *Lassiter v. Department of Social Services*, 452 U.S. 18 (1981), which acknowledges that due process may require

appointed counsel in parental rights proceedings where the risk of erroneous deprivation is

high and the state's interest is minimal.

72. Jurisdictional requirements for subject matter, personal jurisdiction, and territorial

jurisdiction were not satisfied before the removal of G.L.Stephens, rendering all subsequent

orders void ab initio under controlling Supreme Court precedent in *United States v. United

Mine Workers*, 330 U.S. 258 (1947). Despite Plaintiff's prompt and repeated challenges to

jurisdiction upon discovering the removal of G.L.Stephens by OKDHS, no court has

conducted the requisite evidentiary hearing to establish a proper jurisdictional basis as

required by *Kulko v. Superior Court*, 436 U.S. 84 (1978).

73. **Plaintiff has never been adjudicated unfit in any proceeding comporting with due
process, has never had her parental rights lawfully terminated, and has been
systematically denied meaningful access to her daughter. She has been excluded from
all legal, educational, and medical decisions despite no finding of unfitness.
Court-ordered communications are sporadic, heavily monitored, and frequently
withheld unless Plaintiff pays exorbitant fees, effectively creating a hostage-ransom
situation that offends fundamental constitutional principles established in *Troxel v.
Granville*, 530 U.S. 57 (2000).**

74. The sacred mother-child relationship is being irreparably destroyed through the continuing

enforcement of facially void and unconstitutional orders. Each day of enforcement inflicts

new and compounding harm to the parent-child bond that cannot be remedied by

post-deprivation proceedings. The continuing enforcement of these void orders violates

Plaintiff's fundamental rights under the Due Process Clause of the Fourteenth Amendment

and directly contravenes the Supreme Court's clear precedent in *Stanley v. Illinois*, 405 U.S.

645 (1972) and *Santosky v. Kramer*, 455 U.S. 745 (1982).

## XII. LEGAL CLAIMS FOR RELIEF

75. Plaintiff asserts the following claims for relief, arising from the unlawful detention of her

minor daughter, G.L.Stephens, and the systemic deprivation of her fundamental rights under

color of state law. This state-sanctioned kidnapping, executed through void court orders,

fraud, and judicial misconduct, violates the U.S. and Oklahoma Constitutions, federal

statutes, and state law. Plaintiff seeks habeas corpus, civil rights remedies, declaratory relief,

injunctive relief, and an emergency permanent restraining order to end this constitutional

crisis and restore the lawful parent-child relationship that has been severed through abuse of

governmental authority and coordinated obstruction of justice.

**CAUSE OF ACTION I: PETITION FOR WRIT OF HABEAS CORPUS (28 U.S.C. § 2241,
28 U.S.C. § 1651, and 12 O.S. § 1331)
(Unlawful Detention of biological property (female offspring) G.L.Stephens in Violation of
Constitutional Rights)
All Defendants**

76. Plaintiff hereby incorporates by reference all paragraphs of this Petition as though fully set

forth herein, including all factual allegations, legal arguments, and exhibits attached hereto.

77. Pursuant to 28 U.S.C. § 2241(c)(3), 28 U.S.C. § 1651 (the All Writs Act), and 12 O.S. §

1331, this Court is vested with authority to grant habeas corpus relief where a person is

detained in violation of the Constitution, laws, or treaties of the United States. Although

Plaintiff is not personally incarcerated, her biological property, G.L.Stephens, is unlawfully

detained (unwarranted seizure) under color of state law by Defendants through void orders in

juvenile court propagated by family court and child support enforcement court, etc.

78. The challenged orders, issued without subject-matter/personal/territorial jurisdiction, proper

notice, or adherence to due process, were predicated on falsified documents and extrinsic

fraud, rendering them void ab initio. See *U.S. v. United Mine Workers*, 330 U.S. 258, 291

(1947); *United States v. McIntos*h, 833 F.3d 1163, 1172 (10th Cir. 2016).

79. G.L.Stephens has been separated from Plaintiff, her biological owner/mother, since

December 3, 2021, subjected to parental alienation, and exposed to documented risks in her

current placement with Adam Sylvester Stephens, a known and substantiated child abuser.

Defendants' enforcement of these orders constitutes a state-sanctioned kidnapping, violating

Plaintiff's fundamental rights to familial association and due process under the First and

Fourteenth Amendments.

80. This right cannot be infringed absent strict procedural safeguards, including adequate notice,

an evidentiary hearing, the opportunity to be heard, and a judicial finding—based on clear

and convincing evidence—that the parent is unfit or that removal is justified by a compelling

state interest. See *Troxel v. Granville*, 530 U.S. 57, 65-66 (2000); *Santosky v. Kramer*, 455

U.S. 745, 753 (1982); *Stanley v. Illinois*, 405 U.S. 645, 651-52 (1972); *Halley v. Huckaby*,

902 F.3d 1136, 1153 (10th Cir. 2018).

81. The Oklahoma courts' failure to join indispensable parties, reliance on forged documents, and

improper venue render its custody orders void ab initio for lack of subject-matter, personal,

and territorial jurisdiction and violation of due process. As a matter of constitutional law, the

state may not interfere with the fundamental parent-child relationship without first affording

full and fair judicial process.

82. Oklahoma officials declared OKDHS and then Adam Sylvester Stephens the custodian of a

biological property (female offspring) without notice to Plaintiff, without joinder of the

primary-attachment and primary biological owner/mother (Plaintiff) and without any

evidentiary proceeding—thus violating both procedural and substantive due process guarantees.

83. The Tenth Circuit has clarified that constitutional claims may be heard in federal court even when they arise from a family law context. *Vaughan v. Smithson*, 883 F.2d 63, 64 (10th Cir. 1989). In *Halley v. Huckaby*, 902 F.3d 1136, 1153 (10th Cir. 2018), the Court emphasized that parental rights are among the most critical liberty interests protected by the Constitution and that procedural shortcuts are constitutionally <u>impermissible</u>.

84. The orders violate the **UCCJEA**, which Oklahoma has codified at Okla. Stat. tit. 43, § 551-101 et seq. The UCCJEA confers exclusive jurisdiction over custody matters to the child's "home state," and mandates joinder of all persons claiming parental status. Because no proper paternity or custody proceeding was opened in the correct jurisdiction and the biological parent (Plaintiff) was never joined, the Oklahoma court lacked jurisdiction from the outset.

85. The Supreme Court's recent decision in *Golan v. Saada*, 596 U.S. ___ (2022), though addressing the **Hague Convention on International Child Abduction**, establishes principles equally applicable to domestic custody disputes involving grave risk to children. The Court held that when a grave risk of harm to a child is established, courts retain discretion to determine appropriate remedies and are not categorically required to examine all possible ameliorative measures before denying a return petition.

86. The Court emphasized that "any consideration of ameliorative measures must prioritize the child's physical and psychological safety" and that a court may "decline to consider imposing ameliorative measures where it is clear that they would not work because the risk is so grave." In cases involving child abuse, the Court noted that such situations may "constitute

an obvious grave risk to the child's safety that could not readily be ameliorated." The Court
further recognized that "a court may also decline to consider imposing ameliorative measures
where it reasonably expects that they will not be followed."

87. The placement of G.L.Stephens with Adam Sylvester Stephens, who has substantiated cases
of child abuse documented by both Oregon DHS and OKDHS whistleblower Maria Chico,
presents precisely the type of grave risk that Golan v. Saada recognizes as justifying
immediate intervention without further ameliorative measures. The deliberate concealment of
this evidence by OKDHS supervisors who truncated official reports constitutes both fraud on
the court and demonstrates the futility of expecting that any ameliorative measures would
adequately protect G.L.Stephens while in Adam Sylvester Stephens' custody.

88. As the Supreme Court recognized, "the Convention explicitly recognizes that the child's
interest in avoiding physical or psychological harm, in addition to other interests, 'may
overcome the return remedy.'" Here, the substantiated history of child abuse by Adam
Sylvester Stephens creates a grave risk that cannot be effectively mitigated by lesser
measures, requiring the immediate return of G.L.Stephens to her biological mother.

89. The continued placement of G.L.Stephens with Adam Sylvester Stephens creates an
imminent risk of harm to the child, given his documented history of child abuse substantiated
by both Oregon DHS and OKDHS whistleblower Maria Chico. The intentional suppression
of this evidence by OKDHS supervisors who truncated official reports constitutes fraud on
the court and deliberate endangerment of G.L.Stephens

90. Plaintiff has diligently pursued relief in Oklahoma state courts, including motions under
Oklahoma's equivalent to Rule 60(b) and other procedural vehicles, all of which were

summarily denied without meaningful review. The Oklahoma judiciary's structural conflicts render state remedies inadequate and illusory.

91. Plaintiff respectfully requests that this Court: (a) issue a writ of habeas corpus directing the immediate release of G.L.Stephens from unlawful detention by OKDHS and subsequently by Adam Sylvester Stephens; (b) restoration of custody to Plaintiff; (b) declare the Oklahoma's custody orders and child support orders and child support enforcement orders void ab initio; and (c) enjoin Defendants from further enforcing said orders.

**CAUSE OF ACTION II: VIOLATION OF CIVIL RIGHTS (42 U.S.C. § 1983) AND DEPRIVATION OF RIGHTS UNDER COLOR OF LAW (18 U.S.C. § 242) (Involuntary Servitude, Coerced Labor, and State-Facilitated Child Trafficking, Fourth Amendment - Unwarranted Seizure of Child and of Plaintiff (False Imprisonment, Unlawful Arrest 25 CFR § 11.404)) All Defendants**

48. Plaintiff hereby incorporates by reference all paragraphs of this Petition as though fully set forth herein, including all factual allegations, legal arguments, and exhibits attached hereto.

49. Acting under color of state law, Defendants—including OKDHS, OKCPS, Tulsa County District Court, STATE OF OKLAHOMA's employees, Bridget O'Brien a/k/a Bridget Kay Menser, and Adam Sylvester Stephens—have deprived, and continue to deprive, Plaintiff of her clearly established rights guaranteed by the Fourteenth Amendment to the United States Constitution, including procedural due process, substantive due process, and the fundamental liberty interest in familial association.

50. Defendants unlawfully seized G.L.Stephens from her school on December 3, 2021 without a valid warrant and without documented exigent (emergent) circumstances, based solely on unfounded claims, in violation of her Fourth Amendment rights against unreasonable seizure.

51. The Supreme Court and Tenth Circuit have recognized that the seizure of a child from their parent constitutes a "seizure" under the Fourth Amendment requiring probable cause, not

mere suspicion. The court has held that "child welfare officials are not exempt from Fourth

Amendment constraints when they effectuate the removal of children from their parents'

custody," establishing that warrantless seizures of children are presumptively

unconstitutional absent genuine emergency circumstances supported by articulable facts.

52. No such emergency circumstances existed in this case. G.L.Stephens was seized from school

without any evidence of imminent danger, without a federal warrant specifically authorizing

such removal (required due to G.L.Stephens being a Vietnamese citizen of the Asian

continent by law and birth rights), and without affording the Plaintiff an opportunity to

contest the basis for removal prior to its execution.

53. This seizure was conducted without exigent circumstances, in violation of clearly established

Fourth Amendment principle.

54. Exacerbating the constitutional violation, G.L.Stephens was placed in the custody of Adam

Sylvester Stephens, a known child abuser with substantiated cases of abuse in multiple states

(Oregon, California, Washington, Oklahoma, etc.), while evidence of this abuse was

intentionally concealed by state officials and, when confronted, they continued to disregard

it, thereby perpetuating the abuse of children to secure state funding through Social Security

Act Title IV to commit fraud against taxpayers and the public.

55. The custody orders were entered without subject-matter/personal/territorial jurisdiction,

without constitutionally adequate notice, without joinder of indispensable parties, and based

on falsified documents and sealed evidence. These orders are void ab initio and have never

been subject to lawful adjudication or adversarial testing.

56. The state actors deliberately concealed and suppressed evidence of Adam Sylvester Stephens'

history of child abuse, placing G.L.Stephens in the custody of a known abuser and creating

an ongoing risk of serious harm to the child. This concealment, including the truncation of official reports by OKDHS supervisors, constitutes fraud on the court and deliberate indifference to G.L.Stephens's safety and welfare.

57. The ongoing enforcement of these void orders has served, and continues to sever, Plaintiff's constitutionally protected parental relationship with her biological female offspring, G.L.Stephens, without any judicial determination of parental unfitness, without a due process hearing, and without any opportunity for adversarial testing. Each act of enforcement constitutes a discrete and continuing constitutional violation under 42 U.S.C. § 1983.

58. The continuing violation doctrine applies, as the enforcement of these void orders constitutes an ongoing deprivation of Plaintiff's constitutional rights. See *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005); *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976); *Troxel v. Granville*, 530 U.S. 57, 65-66 (2000); *J.B. v. Washington County*, 127 F.3d 919, 925 (10th Cir. 1997).

59. The Supreme Court's analysis in *Golan v. Saada*, 596 U.S. ___ (2022), reinforces that courts must prioritize a child's physical and psychological safety when evidence of abuse exists. The Court specifically noted that "sexual abuse of a child is one example of an intolerable situation" and that "other physical or psychological abuse, serious neglect, and domestic violence in the home may also constitute an obvious grave risk to the child's safety that could not readily be ameliorated." This principle applies with equal force to constitutional claims under § 1983, particularly where state actors have deliberately concealed evidence of abuse.

60. Defendants' placement of G.L.Stephens with Adam Sylvester Stephens, despite documented evidence of his history of child abuse, constitutes deliberate indifference to G.L.Stephens's safety and welfare in violation of her substantive due process rights. As the Supreme Court recognized in *Golan*, courts may properly "decline to consider imposing ameliorative

measures where it reasonably expects that they will not be followed," citing as an example a "parent with history of violating court orders." Here, the deliberate concealment of abuse evidence by state actors suggests not only that ameliorative measures would be insufficient, but that the state itself cannot be trusted to properly monitor and protect G.L.Stephens while in Adam Sylvester Stephens' custody.

61. The constitutional violations in this case are particularly egregious because Defendants not only failed to protect G.L.Stephens from a known risk of harm but actively facilitated her placement in a dangerous environment by concealing evidence that would have prevented such placement. *Golan v. Saada* confirms that the state's interest in family unity or custodial determinations must yield to "the primary interest of any person in not being exposed to physical or psychological danger or being placed in an intolerable situation." This principle applies with even greater force where, as here, the child has been removed from a fit parent and placed with an individual with documented history of abuse.

62. Plaintiff has suffered irreparable injury, including but not limited to: the loss of her fundamental parental rights; severe emotional and psychological trauma; reputational damage; and the destruction of the mother-child bond.

63. Plaintiff respectfully requests: (a) a declaratory judgment that Defendants' actions violate her Fourth Amendment rights; (b) an injunction prohibiting further enforcement of the void Oklahoma's orders since December 2021; (c) restoration of Plaintiff's full parental rights without restrictions nor extortion fees nor ransom fees to G.L.Stephens; and (d) such further relief as the Court deems just and necessary.

## CAUSE OF ACTION III: JUDICIAL DECEPTION AND INTERFERENCE WITH FAMILIAL ASSOCIATION (42 U.S.C. § 1983)
### All Defendants

67. Plaintiff hereby incorporates by reference all paragraphs of this Petition as though fully set forth herein, including all factual allegations, legal arguments, and exhibits attached hereto.

68. As in L.K. v. Dr. Robinson, where the court critiqued the use of judicial power to separate families without just cause, the actions by Defendants demonstrate a continued effort to disrupt Plaintiff's relationship with her female offspring through deceptive practices and unfounded claims.

69. Defendants have deliberately misrepresented facts to the court, concealed exculpatory evidence, and engaged in a pattern of deception designed to maintain the unlawful separation of Plaintiff from her female offspring.

70. These actions have directly interfered with Plaintiff's constitutionally protected interest in familial association, recognized as a fundamental liberty interest by the Supreme Court in numerous decisions, including Troxel v. Granville, 530 U.S. 57 (2000) and Meyer v. Nebraska, 262 U.S. 390 (1923).

71. The interference with Plaintiff's familial association rights was conducted without any compelling governmental interest, without narrowly tailored means, and without adherence to basic due process requirements.

72. Plaintiff respectfully requests: (a) a declaratory judgment that Defendants' actions violate her right to familial association; (b) an injunction prohibiting further interference with her parent-child relationship; and (c) such further relief as the Court deems just and necessary.

**CAUSE OF ACTION IV: FALSE ARREST AND JUDICIAL DECEPTION (42 U.S.C. § 1983)**
**All Defendants**

73. Plaintiff hereby incorporates by reference all paragraphs of this Petition as though fully set forth herein, including all factual allegations, legal arguments, and exhibits attached hereto.

74. The extended unlawful detention of G.L.Stephens stems from fraudulent narratives and mischaracterizations similar to those found in the aforementioned Louisiana case of *L.K. v. Dr. Robinson*.

75. Defendants have knowingly presented false information to judicial authorities, suppressed exculpatory evidence, and manipulated legal processes to maintain the unlawful separation of G.L.Stephens from her mother.

76. These actions constitute false arrest and detention under color of law, violating both Plaintiff's and G.L.Stephens's Fourth and Fourteenth Amendment rights.

77. The Supreme Court has recognized that the presentation of deliberately false or misleading information to judicial officers in order to obtain judicial orders constitutes a violation of clearly established constitutional rights. See *Franks v. Delaware*, 438 U.S. 154 (1978); *Malley v. Briggs*, 475 U.S. 335 (1986).

78. Plaintiff respectfully requests: (a) a declaratory judgment that Defendants' actions constitute **false arrests of both G.L.Stephens and Plaintiff** and **judicial deception**; (b) an <u>injunction prohibiting further detention</u> because it was all based on fraudulent representations; and (c) such further relief as the Court deems just and necessary.

### CAUSE OF ACTION V: MALICIOUS PROSECUTION (42 U.S.C. § 1983)
**All Defendants**

79. Plaintiff hereby incorporates by reference all paragraphs of this Petition as though fully set forth herein, including all factual allegations, legal arguments, and exhibits attached hereto.

80. Defendants acted with malice and without documented reliable probable cause, leading to irreparable harm to Plaintiff's dignity and agency.

81. Defendants initiated and maintained legal proceedings against Plaintiff without probable
    cause, with malice, and with the intent to deprive her of her constitutionally protected
    parental rights and with the intent to intimidate/abuse.

82. These proceedings terminated in Plaintiff's favor on multiple occasions, only to be reinstated
    through procedural manipulations and ex parte communications designed to circumvent
    proper judicial review.

83. Defendants' actions have caused substantial damage to Plaintiff, including severe emotional
    distress, reputational harm, and the loss of the parent-child relationship.

84. Plaintiff respectfully requests: (a) a declaratory judgment that Defendants' actions constitute
    malicious prosecution; (b) an injunction prohibiting further malicious proceedings; and (c)
    such further relief as the Court deems just and necessary.

### CAUSE OF ACTION VI: FIRST AMENDMENT RETALIATION (42 U.S.C. § 1983)
### All Defendants

85. Plaintiff hereby incorporates by reference all paragraphs of this Petition as though fully set
    forth herein, including all factual allegations, legal arguments, and exhibits attached hereto.

86. Retaliatory actions against Plaintiff for asserting her rights violate protected expressions
    guaranteed under the First Amendment.

87. Plaintiff has engaged in constitutionally protected activities, including filing court motions,
    requesting hearings, seeking access to sealed records, and advocating for her parental rights
    and the return of her female offspring.

88. Defendants have retaliated against Plaintiff for engaging in protected activities by:

    o   Denying access to court records and evidence

    o   Summarily dismissing motions without hearings

    o   Imposing increasingly restrictive conditions on visitation

---

- o Threatening further restrictions if Plaintiff continues to advocate for her rights

- o Concealing evidence that would support Plaintiff's claims

- o False protective orders (Plaintiff won against all 4 of them),

- o False violations of fraudulent and unadjudicated protective order lasted for two years
  (Plaintiff won both of them)

- o False imprisonment for unvalidated debt in February 2024 sentence served

- o Retaliation by the Medical Board (Plaintiff prevailed in the Oklahoma Supreme Court
  appeal, acting in propria persona or sui juris, case No. **DF-121,740**).

- o Unconstitutional Double Jeopardy: Repeated malicious prosecution for the same
  contempt of court related to an unvalidated debt, and continuation of contempt
  proceedings despite ongoing appeals in both state and federal courts concerning allegedly
  fraudulent child support orders.

- o A series of court orders of false imprisonment without any criminal charges from the
  District Attorney's Office showing Tulsa County District Court's corruption, malicious
  acts, while **lacking all jurisdiction (case No. FD-2015-2228)**, have resulted in the
  imposition of an unconstitutional debtor prison sentence of six months, repeatedly
  applied since May 2025. This occurred despite prior these unconstitutional court orders,
  the case's removal to federal court was pending in U.S. District Court Northern District,
  case No. **24-CV-216-JDR-CDL** (subsequently transferred to the 10th Circuit, case No.
  **25-5063**), and while an appeal to the Oklahoma Supreme Court remains pending under
  case number **DF-122022** and United States Supreme Court filings correspondences
  07/2024 and 05/2025 (see **Exhibit #5**) still PENDING until this date.

89. Plaintiff respectfully requests: (a) a declaratory judgment that Defendants' actions constitute **First Amendment retaliation**; (b) an injunction prohibiting further retaliatory conduct and malicious prosecutions; and (c) such further relief as the Court deems just and necessary.

### CAUSE OF ACTION VII: DISCRIMINATION BASED ON NATIONAL ORIGIN, GENDER, RELIGION, ADA RIGHTS, AND OTHER RIGHTS
### All Defendants

91. Plaintiff hereby incorporates by reference all paragraphs of this Petition as though fully set forth herein, including all factual allegations, legal arguments, and exhibits attached hereto.

92. Ongoing biases against Plaintiff have surfaced throughout her interactions with the court and child protective services and all Defendants

93. Defendants have engaged in discriminatory conduct based on Plaintiff's Vietnamese origin and naturalized American traveler and freeman status, in violation of the Equal Protection Clause of the Fourteenth Amendment and federal civil rights laws.

94. This discrimination is evidenced by:

   o Disparate treatment compared to similarly situated parents of different national origins and of Adam SYLVESTER STEPHENS, with financial conflicts of interest being pervasive

   o Biased characterizations of Plaintiff's parenting practices based on cultural stereotypes and religious devotion to Messiah Yahusha (Jesus Christ).

   o Application of different standards and requirements than those applied to parents of different national origins, gender, religion, ADA rights, and other rights

   o Dismissive treatment of Plaintiff's concerns, evidence, and reliable neutral witnesses

95. Such discrimination violates Plaintiff's clearly established right to equal protection under the law regardless of national origin or citizenship status.

96. Plaintiff respectfully requests: (a) a declaratory judgment that Defendants' actions constitute unlawful discrimination; (b) an injunction **prohibiting further discriminatory conduct**; and (c) such further relief as the Court deems just and necessary.

## CAUSE OF ACTION VIII: FRAUD UPON THE COURT
### All Defendants

97. Plaintiff hereby incorporates by reference all paragraphs of this Petition as though fully set forth herein, including all factual allegations, legal arguments, and exhibits attached hereto.

98. Misrepresentation of facts and evidence in court proceedings undermines judicial integrity and exemplifies a concerning trend observed in the *L.K. case.*

99. Defendants have engaged in a pattern of deliberate fraud upon the court, including:

   o   Submitting falsified and altered documents

   o   Concealing exculpatory evidence, including DNA test results establishing G.L.Stephens's biological father

   o   Misrepresenting facts and circumstances to obtain ex parte orders

   o   Deliberately truncating and altering reports documenting Adam Sylvester Stephens' factual history of child abuses

   o   Providing false testimony and sworn statements

100.   These fraudulent actions have directly affected the integrity of the judicial process, led to void orders being enforced as if valid, and resulted in the ongoing unlawful separation of Plaintiff from her female offspring.

101.   Courts have inherent authority to remedy fraud on the court, particularly when such fraud undermines the integrity of judicial proceedings and results in ongoing constitutional violations. *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944); *Chambers v. NASCO*, Inc., 501 U.S. 32 (1991).

102.   Plaintiff respectfully requests: (a) a declaration that Defendants have committed **fraud upon the court**; (b) an order <u>vacating all orders</u> obtained through fraud by Oklahoma's courts since December 2021; (c) <u>sanctions</u> against those responsible for perpetrating the fraud; and (d) such further relief as the Court deems just and necessary.

### CAUSE OF ACTION IX: ONGOING HARASSMENT AND DENIAL OF RIGHTS
### All Defendants

103.   Plaintiff hereby incorporates by reference all paragraphs of this Petition as though fully set forth herein, including all factual allegations, legal arguments, and exhibits attached hereto.

104.   Continuous infringement of core constitutional rights experienced by Plaintiff because of the negligence or intentional misconduct of Defendants.

105.   Defendants have engaged in a sustained campaign of harassment against Plaintiff, including:

o   Imposing arbitrary and punitive restrictions on contact with G.L.Stephens

o   Monitoring and recording private communications

o   <u>Threatening additional restrictions and false imprisonment/malicious prosecution if Plaintiff continues to advocate for her rights and her biological property's rights and advocating for safety of all Oklahoma's children, elderly, and disabled adults.</u>

o   Interfering with Plaintiff's ability to obtain **grand jury of her peers**

o   <u>Deliberately scheduling hearings and proceedings at times when Plaintiff cannot attend, The Plaintiff and all her American Disability Act advocates and court watchers were all denied virtual access to hearings while other parties and cases were granted such virtual access at the same time and date. Subsequently, it was fraudulently documented by Defendants that the Plaintiff failed to appear</u> (see **Exhibit #4,** featuring a witness

statement and signature that have been redacted for the witness's safety pending a jury

trial in this superior court).

- ○ Refusing to provide notice of medical, educational, or legal decisions regarding

    G.L.Stephens

106.    This pattern of **harassment and discrimination** has no legitimate governmental purpose

and serves only to further maliciously prosecute Plaintiff for asserting her constitutional

rights and seeking the return of her female offspring.

107.    Plaintiff respectfully requests: (a) a declaratory judgment that Defendants' actions

constitute unlawful harassment; (b) an injunction prohibiting further harassment; and (c) such

further relief as the Court deems just and necessary.

### CAUSE OF ACTION X: CIVIL CONSPIRACY TO DEPRIVE CONSTITUTIONAL RIGHTS UNDER 42 U.S.C. § 1985(3)
### All Defendants

108.    Plaintiff hereby incorporates by reference all paragraphs of this Petition as though fully

set forth herein, including all factual allegations, legal arguments, and exhibits attached

hereto.

109.    All Defendants, acting in concert under color of state law, engaged in a civil conspiracy

to deprive Plaintiff of her constitutional rights under the First, Fourth, and Fourteenth

Amendments. This conspiracy was designed to deny Plaintiff access to a neutral judicial

forum, suppress dispositive evidence (including DNA test results and evidence of Adam

Sylvester Stephens' history of child abuse), obstruct meaningful judicial review, and retaliate

against her for engaging in protected advocacy. Adickes v. S.H. Kress & Co., 398 U.S. 144,

150-52 (1970); Dennis v. Sparks, 449 U.S. 24, 27-29 (1980).

110.    The conspiracy was effectuated through coordinated acts, including misuse of authority,

manipulation of court dockets, denial of evidentiary hearings, concealment of exculpatory

evidence, and deliberate truncation of official abuse reports by OKDHS supervisors to conceal Adam Sylvester Stephens' history of child abuse, all in furtherance of the conspiratorial objectives.

111.    These acts were undertaken with discriminatory animus against Plaintiff based on her national origin as a Vietnamese-American, and in furtherance of a state-sponsored scheme to retaliate against her and conceal systemic misconduct.

112.    The conspiracy included a deliberate plan to place G.L.Stephens with Adam Sylvester Stephens despite knowledge of his history of child abuse, creating an ongoing risk of serious harm to the child while simultaneously depriving Plaintiff of her constitutional rights.

113.    Plaintiff has sustained profound and irreparable harm as a direct result of Defendants' unlawful conduct, including but not limited to: the ongoing deprivation of her constitutionally protected parental rights; severe emotional and psychological trauma; reputational and professional injury; and the coerced destruction of the sacred and irreplaceable bond between mother and child—all without lawful adjudication, due process, or justification.

114.    Plaintiff respectfully requests: (a) a declaratory judgment that Defendants engaged in a conspiracy under 42 U.S.C. § 1985(3); (b) an injunction prohibiting further conspiratorial acts; (c) an order compelling disclosure of all suppressed evidence, including the unaltered reports documenting Adam Sylvester Stephens' history of child abuse; and (d) such further relief as the Court deems just and necessary.

**CAUSE OF ACTION XI: DECLARATORY RELIEF UNDER 28 U.S.C. §§ 2201-2202**
**(Voidness of State Custody Orders, Structural Denial of Due Process)**
**All Defendants**

115.    Plaintiff hereby incorporates by reference all paragraphs of this Petition as though fully set forth herein, including all factual allegations, legal arguments, and exhibits attached hereto.

116.    Pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, Plaintiff seeks a judicial declaration that the custody orders pertaining to G.L.Stephens are void ab initio and constitutionally infirm, as they were entered without subject-matter jurisdiction, without constitutionally adequate notice, without joinder of indispensable parties, and based on falsified and sealed documents.

117.    The continued enforcement of these void orders violates Plaintiff's fundamental rights under the First and Fourteenth Amendments, as it deprives her of her parental relationship with G.L.Stephens without due process or lawful adjudication.

118.    The placement of G.L.Stephens with Adam Sylvester Stephens, a known child abuser with substantiated cases of abuse in multiple states, creates an immediate and ongoing risk of serious harm to the child, in violation of her constitutional rights to safety and security.

119.    Declaratory relief is essential to prevent the ongoing and irreparable constitutional, statutory, and human harms that continue to unfold under color of void state orders and systemic misconduct. This is not a case of past injury alone—it is a matter of continuing deprivation, perpetuated daily through the enforcement of facially void custody orders that remain in full effect without lawful basis, judicial scrutiny, or constitutional safeguards.

120.    Absent declaratory relief, Plaintiff faces ongoing violations of her fundamental rights: the continued severance of her parent-child relationship; the state-enabled concealment and psychological coercion of her biological female offspring; and the placement of G.L.Stephens with a known child abuser, creating immediate risks to her safety and welfare.

121.    The doctrine of prospective relief under 28 U.S.C. § 2201 is precisely designed for circumstances such as these, where unconstitutional conduct is not a completed event but a continuing course of action. The void custody orders at issue were procured through fraud, sealed proceedings, and lack of jurisdiction, and yet they are enforced as if lawful.

122.    Such declaratory relief is warranted under established precedent. See Ex parte Young, 209 U.S. 123, 155-56 (1908); Caperton v. A.T. Massey Coal Co., 556 U.S. 868, 876-77 (2009); Chaffin v. Kansas State Fair Bd., 348 F.3d 850, 866 (10th Cir. 2003).

123.    Plaintiff respectfully requests: (a) a declaratory judgment that the custody orders pertaining to G.L.Stephens are void ab initio; (b) a declaration that Plaintiff retains full parental rights to G.L.Stephens; (c) a declaration that the continued enforcement of these orders is unconstitutional; and (d) a declaration that the placement of G.L.Stephens with Adam Sylvester Stephens, a known child abuser, constitutes deliberate indifference to her safety and welfare.

## CAUSE OF ACTION XII: VIOLATION OF FULL FAITH AND CREDIT CLAUSE (U.S. CONST. ART. IV, § 1)

**(Failure to Honor Binding Oregon Custody Decree) All Defendants**

124.    Plaintiff hereby incorporates by reference all paragraphs of this Petition as though fully set forth herein, including all factual allegations, legal arguments, and exhibits attached hereto.

125.    Article IV, Section 1 of the United States Constitution provides that "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings

of every other State." This constitutional mandate requires Oklahoma to recognize and enforce valid judgments rendered by courts of sister states, including Oregon.

126.    On January 8, 2016, a valid and binding divorce decree was entered in Columbia County, Oregon, establishing "50/50 joint legal and physical custody" of G.L.Stephens between Plaintiff and Adam Sylvester Stephens, with "unhampered access to child for both parties," and "Jeep and Trailer [from Linh to Adam] in lieu of child support [until child ages out]." This decree, titled "Stipulated General Judgment of Dissolution of Marriage; and Money Award (Co-Plaintiffs)" was officially executed on January 8, 2016 in the "Circuit Court of the State of Oregon for the County of Columbia, Department of Domestic Relations, case No. 15DR18623, Judge Cathleen B. Callahan."

127.    The Supreme Court has consistently held that the Full Faith and Credit Clause requires states to recognize custody and support determinations made by courts of sister states. See *V.L. v. E.L.*, 577 U.S. 404, 407 (2016) (holding that the Full Faith and Credit Clause requires states to recognize adoption decrees issued by courts in other states); *Baker v. General Motors Corp.*, 522 U.S. 222, 233 (1998) (clarifying that "the Full Faith and Credit Clause does not permit a State to disregard the judgment of a sister State because it disagrees with the reasoning underlying the judgment or deems it to be wrong on the merits").

128.    In *Thompson v. Thompson*, 484 U.S. 174, 183 (1988), the Supreme Court recognized that the "chief object" of the Full Faith and Credit Clause "was to serve the vital need of the federalism embodied in the Constitution for a means of effectively implementing the peaceful relations between sovereign state jurisdictions," particularly in the context of custody determinations.

129.    The Tenth Circuit has specifically addressed this issue in *Garcia v. Garcia*, 639 F.3d

1300, 1304 (10th Cir. 2011), holding that "a state must give full faith and credit to a child

support order issued by another state's tribunal that had subject-matter jurisdiction to hear

and rule on the matter, had personal jurisdiction over the contestants, and provided

reasonable notice and opportunity to be heard."

130.    Despite the binding nature of the Oregon decree, Defendants systematically

disregarded its terms, instead creating a duplicative and contradictory custody

arrangement without proper jurisdiction or constitutional authority. Defendants' actions

include: * Modifying the Oregon custody decree from 50/50 custody to zero contact

without jurisdiction or due process; * Instituting a new child support obligation despite

the Oregon decree's explicit provision of "Jeep and Trailer in lieu of child support"; *

Enforcing these void orders through arrest, imprisonment, and the seizure of Plaintiff's

passport and retirement funds.

131.    Defendants' refusal to honor the binding Oregon decree violates the Full Faith and

Credit Clause of the Constitution and undermines the federal system of cooperative

federalism. This violation has directly resulted in the unlawful detention of G.L.Stephens

away from her mother and the unconstitutional enforcement of void orders against

Plaintiff.

132.    Plaintiff respectfully requests that this Court: (a) declare that the Oregon decree

remains the only valid and binding custody and support determination regarding

G.L.Stephens; (b) declare that all Oklahoma orders purporting to modify the Oregon

decree are void ab initio for lack of jurisdiction and violation of the Full Faith and Credit

Clause; (c) order the immediate enforcement of the Oregon decree's terms, including the

return of G.L.Stephens to 50/50 custody with her mother; and (d) enjoin all Defendants

from further violating the Full Faith and Credit Clause through enforcement of void

Oklahoma orders.

## CAUSE OF ACTION XIII: MONELL LIABILITY FOR UNCONSTITUTIONAL CUSTOMS, POLICIES, AND PRACTICES (42 U.S.C. § 1983)

**All Institutional Defendants**

133.    Plaintiff hereby incorporates by reference all paragraphs of this Petition as though

fully set forth herein, including all factual allegations, legal arguments, and exhibits

attached hereto.

134.    Under *Monell v. Department of Social Services*, 436 U.S. 658, 690-91 (1978),

municipalities and other local government entities can be held liable under 42 U.S.C. §

1983 when their official policies or customs cause constitutional violations. This liability

extends to formal policies, widespread customs, actions taken by final policymakers,

deliberately indifferent training or supervision, and express adoption or ratification of

unconstitutional actions.

135.    The institutional Defendants—including OKDHS, CPS, CSS, and Tulsa County

District Court—have established and maintained policies, customs, and practices that

systematically violate the constitutional rights of parents and children, including Plaintiff

and G.L.Stephens. These unconstitutional policies and customs include, but are not

limited to: * Seizing children without warrants or exigent circumstances in

non-emergency situations; * Disregarding jurisdictional limitations and established legal

precedent regarding parental rights; * Fabricating allegations against protective parents

while concealing evidence of abuse by non-protective parents; * Enforcing void orders in

violation of due process, equal protection, and full faith and credit; * Imposing financial

barriers to parent-child contact through costly supervised visitation requirements; *

Treating custody orders as child support enforcement mechanisms in violation of

contractual rights and statutory protections; * Deliberately truncating and concealing

official reports documenting child abuse to facilitate placement with abusive parents.

136.    These policies and customs are so persistent and widespread as to constitute de facto

official policy. The pattern of similar constitutional violations in this case and others

demonstrates a consistent and deliberate institutional approach, not merely isolated

incidents of misconduct. See *Okin v. Village of Cornwall-on-Hudson Police Dept.*, 577

F.3d 415, 439 (2d Cir. 2009) (recognizing that custom can be proven through evidence of

persistent practices).

137.    Final policymakers, including Defendant Jeffrey Cartmell (Director of OKDHS),

Gentner Drummond (Attorney General), and J. Kevin Stitt (Governor), have ratified these

unconstitutional practices through their knowledge of violations and failure to take

corrective action. As the Supreme Court held in *City of St. Louis v. Praprotnik*, 485 U.S.

112, 127 (1988), when policymakers are aware of constitutional violations and fail to stop

them, their continued authorization or approval makes the policy their own.

138.    These institutional Defendants have demonstrated deliberate indifference to the

known or obvious consequences of their policies, as articulated in *Board of County

Commissioners of Bryan County v. Brown*, 520 U.S. 397, 407 (1997). Despite numerous

notices, judicial filings, and documented evidence of systemic constitutional violations,

these entities have failed to implement adequate training, supervision, or corrective measures to prevent further violations.

139.    The institutional customs and policies directly caused the constitutional violations suffered by Plaintiff and G.L.Stephens, including their unlawful separation, the enforcement of void orders, and the ongoing deprivation of their fundamental rights to familial association. As the Supreme Court recognized in *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 166 (1993), municipal entities can be held liable when their policies or customs are the "moving force" behind constitutional violations.

140.    Plaintiff respectfully requests that this Court: (a) declare that the institutional Defendants' policies, practices, and customs violate clearly established constitutional rights; (b) issue an injunction requiring these entities to implement comprehensive reforms to prevent similar violations; (c) order independent oversight of these institutions to ensure compliance with constitutional standards; and (d) grant such other relief as may be necessary to remedy the systemic deficiencies that led to the constitutional violations in this case.

## CAUSE OF ACTION XIV: VIOLATION OF THE UNCONSTITUTIONAL CONDITIONS DOCTRINE

### All Defendants

141.    Plaintiff hereby incorporates by reference all paragraphs of this Petition as though fully set forth herein, including all factual allegations, legal arguments, and exhibits attached hereto.

142.    The unconstitutional conditions doctrine prohibits the government from requiring individuals to surrender constitutional rights as a condition of receiving public benefits or exercising other rights. As the Supreme Court held in *Perry v. Sindermann*, 408 U.S. 593, 597 (1972), the government "may not deny a benefit to a person on a basis that infringes his constitutionally protected interests."

143.    This doctrine applies with particular force in the context of parental rights, which the Supreme Court has recognized as "perhaps the oldest of the fundamental liberty interests recognized." *Troxel v. Granville*, 530 U.S. 57, 65 (2000). Parents cannot be forced to choose between exercising their constitutional rights and maintaining relationships with their children.

144.    Defendants have systematically imposed unconstitutional conditions on Plaintiff's access to her daughter, requiring her to waive fundamental constitutional rights as a prerequisite to exercising her parental rights. These unconstitutional conditions include: * Requiring payment of $150 per hour for therapeutic supervised visits as a condition of any contact with G.L.Stephens, effectively conditioning the fundamental right of familial association on financial capacity; * Demanding that Plaintiff submit to psychological evaluations by court-selected evaluators and accept their conclusions as a condition of maintaining custody, in violation of her liberty interests and privacy rights; * Requiring Plaintiff to make incriminating statements or admissions contrary to her Fifth Amendment rights as a condition of reunification with her daughter; * Forcing Plaintiff to waive her right to challenge jurisdiction, assert constitutional defenses, or seek federal remedies as a condition of participating in state custody proceedings; * Restricting

Plaintiff's freedom of speech and freedom of religion during supervised visits, prohibiting discussion of religious topics (Jesus and the Bible) with her own daughter.

145.    The Supreme Court has consistently invalidated such conditions across various constitutional contexts. In *Koontz v. St. Johns River Water Management District*, 570 U.S. 595, 606 (2013), the Court held that "the unconstitutional conditions doctrine prohibits burdening the Constitution's enumerated rights by coercively withholding benefits from those who exercise them." Similarly, in *Agency for International Development v. Alliance for Open Society International, Inc.*, 570 U.S. 205, 214 (2013), the Court emphasized that the government "may not place a condition on the receipt of a benefit or subsidy that infringes upon the recipient's constitutionally protected rights."

146.    In the specific context of family rights, the Tenth Circuit has recognized that "restrictions on the fundamental right to familial association must be narrowly tailored to serve a compelling state interest and must use the least restrictive means to achieve that interest." *PJ ex rel. Jensen v. Wagner*, 603 F.3d 1182, 1198 (10th Cir. 2010). The conditions imposed by Defendants fail this strict scrutiny test, as they are not narrowly tailored to serve any compelling state interest and are not the least restrictive means available.

147.    Defendants' imposition of these unconstitutional conditions has directly resulted in the prolonged separation of Plaintiff from her daughter and the ongoing violation of their fundamental rights to familial association.

148.    Plaintiff respectfully requests that this Court: (a) declare that the conditions imposed by Defendants violate the unconstitutional conditions doctrine; (b) enjoin Defendants from continuing to impose such conditions on Plaintiff's exercise of her parental rights;

(c) order the immediate restoration of Plaintiff's access to her daughter without unconstitutional restrictions; and (d) grant such other relief as may be necessary to remedy the harm caused by these unconstitutional conditions.

## CAUSE OF ACTION XV: VIOLATION OF FEDERAL PROTECTION OF CHILDREN AGAINST SEXUAL EXPLOITATION ACT (18 U.S.C. §§ 2251-2260A)

**All Defendants**

149.    Plaintiff hereby incorporates by reference all paragraphs of this Petition as though fully set forth herein, including all factual allegations, legal arguments, and exhibits attached hereto.

150.    The Federal Protection of Children Against Sexual Exploitation Act, 18 U.S.C. §§ 2251-2260A, establishes comprehensive protections for children against sexual exploitation and abuse. This federal statutory scheme reflects Congress's determination that protecting children from sexual exploitation is a compelling governmental interest of the highest order. See *New York v. Ferber*, 458 U.S. 747, 757 (1982) (recognizing the "compelling interest in protecting the physical and psychological well-being of minors").

151.    While primarily creating criminal penalties, these federal protections also establish standards of care that state agencies must observe when making custody determinations that impact children's safety. Courts have recognized that state actors who knowingly place children in dangerous situations that facilitate sexual exploitation can be held liable under civil rights laws. See *Doe v. Jackson County*, 542 F. Supp. 2d 1047, 1055 (W.D. Mo. 2008) (finding potential liability where state actors knowingly placed children with abusers).

152.    Defendants have violated these federal protections by knowingly placing

G.L.Stephens with Adam Sylvester Stephens despite documented evidence of his history

of child abuse. Specifically: * Adam Sylvester Stephens has substantiated cases of child

abuse by DHS in Oregon state involving his 15-year-old female offspring when

G.L.Stephens was two years old; * OKDHS whistleblower Maria Chico documented

substantiated abuse against Adam, evidence which was subsequently truncated from

official reports by DHS supervisors Leah Sukovaty and Shasta Miller in an apparent

attempt to conceal Adam's history; * Despite being aware of these serious allegations and

documentation, Defendants deliberately placed G.L.Stephens in Adam's sole custody,

creating a situation of substantial risk to her safety and welfare.

153.    The deliberate concealment of evidence showing Adam's history of abuse, including

the truncation of official reports, directly facilitated this dangerous placement. As the

Supreme Court recognized in *United States v. Holston*, 343 F.3d 83, 91 (2d Cir. 2003), the

government has a compelling interest in "safeguarding the physical and psychological

well-being of a minor," particularly from sexual exploitation.

154.    Defendants' actions in this case—concealing evidence of abuse, ignoring

substantiated reports, and placing G.L.Stephens with a documented abuser—directly

undermine the federal statutory scheme designed to protect children from exploitation.

Their conduct creates precisely the dangerous environment that federal law seeks to

prevent.

155.    The placement of G.L.Stephens with Adam Sylvester Stephens, coupled with the

prohibition on contact with her protective mother, creates an ongoing risk of harm that

this Court has both the authority and obligation to remedy. As recognized in *DeShaney v.*

*Winnebago County Department of Social Services*, 489 U.S. 189, 201 (1989), while the

state generally has no affirmative duty to protect citizens from private harm, it does have

such a duty when its actions create or exacerbate the danger.

156.    Plaintiff respectfully requests that this Court: (a) declare that Defendants' actions in

placing G.L.Stephens with Adam Sylvester Stephens violate federal protections against

child exploitation; (b) order the immediate removal of G.L.Stephens from Adam's

custody to prevent potential harm; (c) require a comprehensive investigation into the

concealment of evidence regarding Adam's abuse history; and (d) grant such other relief

as may be necessary to ensure G.L.Stephens's safety and welfare.

## CAUSE OF ACTION XVI: VIOLATION OF RIGHT TO TRAVEL (U.S. CONST. AMEND. XIV)

**CSS and Relevant Defendants**

157.    Plaintiff hereby incorporates by reference all paragraphs of this Petition as though

fully set forth herein, including all factual allegations, legal arguments, and exhibits

attached hereto.

158.    The right to travel, both domestically and internationally, is a fundamental liberty

protected by the United States Constitution. This right encompasses three separate

components: the right to enter and leave one's own country, the right to travel freely

between states, and the right to be treated equally when temporarily present in another

state. See *Saenz v. Roe*, 526 U.S. 489, 500 (1999).

159.    The Supreme Court has consistently recognized the fundamental nature of the right to

travel internationally. In *Kent v. Dulles*, 357 U.S. 116, 125 (1958), the Court declared that

"the right to travel is a part of the 'liberty' of which the citizen cannot be deprived without

due process of law." Similarly, in *Aptheker v. Secretary of State*, 378 U.S. 500, 505-06

(1964), the Court held that "freedom of travel is a constitutional liberty closely related to

rights of free speech and association."

160.    Despite the fundamental nature of this right, Defendants have unconstitutionally

restricted Plaintiff's right to travel by: * Seizing her U.S. passport through CSS

enforcement actions, preventing her from visiting terminally ill relatives overseas; *

Imposing these restrictions without a warrant, proper hearing, or finding of necessity; *

Basing these restrictions on void child support orders that violate both due process and

the Full Faith and Credit Clause; * Failing to provide any mechanism for temporary

restoration of travel rights even for humanitarian purposes.

161.    These restrictions are particularly egregious because they are based on unvalidated

debt rather than any legitimate governmental interest. As the Supreme Court held in

*Shapiro v. Thompson*, 394 U.S. 618, 629 (1969), any classification that serves to penalize

the exercise of the right to travel must be necessary to promote a compelling

governmental interest. The restriction of Plaintiff's international travel fails this strict

scrutiny test.

162.    The Tenth Circuit has specifically addressed the constitutional dimensions of passport

restrictions in the context of child support enforcement in *Eunique v. Powell*, 302 F.3d

971, 974 (10th Cir. 2002). While recognizing that passport restrictions may be

permissible in certain circumstances, the court emphasized that such restrictions must

comply with due process requirements and be based on valid determinations of support

obligations. The restrictions imposed on Plaintiff fail this standard, as they are based on

void orders entered without jurisdiction or due process.

163.    The denial of Plaintiff's right to travel has caused significant harm, including the

inability to visit terminally ill relatives overseas, attend international medical conferences

relevant to her profession, and freely exercise her rights as a dual citizen of the United

States and Vietnam.

164.    Plaintiff respectfully requests that this Court: (a) declare that the seizure of her

passport violates her constitutional right to travel; (b) order the immediate return of her

passport and removal of any travel restrictions based on void child support orders; (c)

enjoin Defendants from imposing similar restrictions in the future without due process

and legitimate justification; and (d) grant such other relief as may be necessary to remedy

the harm caused by these unconstitutional restrictions.

## CAUSE OF ACTION XVII: VIOLATION OF THE TAKINGS CLAUSE (U.S. CONST. AMEND. V)
### CSS and Relevant Defendants

165.    Plaintiff hereby incorporates by reference all paragraphs of this Petition as though fully

set forth herein, including all factual allegations, legal arguments, and exhibits attached

hereto.

166.    The Fifth Amendment to the United States Constitution, made applicable to the states

through the Fourteenth Amendment, provides that private property shall not "be taken for

public use, without just compensation." This protection applies to all forms of property,

including financial assets such as retirement accounts. See *Loretto v. Teleprompter

Manhattan CATV Corp.*, 458 U.S. 419, 435 (1982) (emphasizing the breadth of the Takings

Clause protection).

167.    Retirement accounts established under the Employee Retirement Income Security Act
(ERISA) receive special statutory protection from seizure, garnishment, or other forms of
legal process. As the Supreme Court held in *Guidry v. Sheet Metal Workers Nat'l Pension
Fund*, 493 U.S. 365, 376 (1990), "ERISA's anti-alienation provision reflects a considered
congressional policy choice, a decision to safeguard a stream of income for pensioners and
their dependents."

168.    Despite these constitutional and statutory protections, Defendants unlawfully seized
Plaintiff's 401(k) retirement account, specifically $64,445.92, against both her objections and
those of her second husband, with whom she established the account. This seizure was
particularly egregious because: * The retirement account was established during Plaintiff's
second marriage, two years after her divorce from Adam Sylvester Stephens was finalized; *
The seizure was based on void child support orders that violate both due process and the Full
Faith and Credit Clause; * The funds were marital property belonging partially to Plaintiff's
second husband, a non-party who did not consent to the garnishment; * The seizure occurred
when Plaintiff was only 40 years old and not retired, triggering significant tax penalties for
early withdrawal; * The seizure was executed without proper notice, hearing, or opportunity
to contest the taking.

169.    The Supreme Court has recognized that the forced liquidation of retirement accounts can
constitute an unconstitutional taking, particularly when the accounts are protected by federal
law and the seizure lacks proper procedural safeguards. See *United States v. Rodgers*, 461
U.S. 677, 690-91 (1983) (discussing the need for equitable considerations before forcing sale
of property).

170.    In the specific context of child support enforcement, the Tenth Circuit has held that while

certain enforcement mechanisms may be permissible, they must still comply with

constitutional requirements, including the Takings Clause. See *N.M. Dept. of Human Servs. v.*

*Tapia*, 642 F.2d 353, 356 (10th Cir. 1981) (emphasizing that enforcement actions must

comply with constitutional constraints).

171.    The seizure of Plaintiff's retirement account constitutes an unconstitutional taking without

just compensation, in violation of the Fifth Amendment. This taking was particularly

unjustified given that it was based on void orders and targeted funds that were exempt from

seizure under both constitutional principles and federal statutory protections.

172.    Plaintiff respectfully requests that this Court: (a) declare that the seizure of her retirement

account violates the Takings Clause; (b) order the immediate return of all seized retirement

funds, plus interest and compensation for any penalties incurred; (c) enjoin Defendants from

further attempts to seize retirement accounts or other protected assets; and (d) grant such

other relief as may be necessary to remedy the harm caused by this unconstitutional taking.

## CAUSE OF ACTION XVIII: VIOLATION OF ETHICAL STANDARDS AND
## CONFLICT OF INTEREST REGULATIONS (28 C.F.R. § 45.2)
### Against All Defendants

173.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

174.    28 C.F.R. § 45.2 establishes mandatory ethical standards for Department of Justice

employees, requiring disqualification when personal or political relationships create conflicts

of interest that compromise the integrity of legal proceedings. While these regulations

directly govern federal employees, the Supreme Court has recognized that such ethical

standards inform the broader concept of due process applicable to all government officials.

See Caperton v. A.T. Massey Coal Co., 556 U.S. 868 (2009) (holding that due process

requires recusal when "the probability of actual bias on the part of the judge or decision-maker is too high to be constitutionally tolerable").

175.    Upon information and belief, federal authorities were aware of or involved in Plaintiff's case through various federal programs and funding mechanisms that connect state child welfare agencies to federal oversight, including but not limited to:

a. Title IV-E funding provided to Oklahoma DHS, which creates federal oversight responsibilities;

b. Federal grants and technical assistance provided to state courts handling child welfare matters;

c. Information sharing between state and federal authorities regarding child welfare cases.

176.    Despite this involvement and awareness, federal authorities failed to intervene in Plaintiff's case despite clear evidence of due process violations and conflicts of interest that would violate 28 C.F.R. § 45.2 if occurring at the federal level.

177.    The principles embodied in 28 C.F.R. § 45.2 are fundamental to ensuring fair proceedings regardless of whether state or federal officials are involved, as recognized in *Williams v. Pennsylvania*, 136 S. Ct. 1899 (2016), where the Court held that due process requires recusal when a judge previously had significant personal involvement in a critical decision in the case.

178.    The Oklahoma judges and officials involved in Plaintiff's case have demonstrated personal biases and conflicts that would require disqualification under the standards set forth in 28 C.F.R. § 45.2, including:

a. Defendants prior involvement with OKDHS that creates a conflict e.g. special judge Rodney Sparkman used to work for 20 years or longer in OKDHS then became docket C

Family Court judge; Defendants' compensation upon retirement shall be proportionally

determined by imposed fines and fees,

b. Defendants personal relationship with each other e.g. special judge April Seibert married

to a leader in Tulsa County Sheriff Department, special judge Deborrah Ludi-Leitch

married to a younger U.S. Attorney General lawyer Mr. Leitch, etc.

c. Defendants demonstrated a pattern of bias against Plaintiff based on her national

origin/gender/religion/disability status as they are all Caucasians and nonAsians

179.    These conflicts of interest have deprived Plaintiff of her constitutional right to a fair and

impartial tribunal, in violation of the Due Process Clause of the Fourteenth Amendment.

180.    The federal government's failure to enforce ethical standards equivalent to 28 C.F.R. §

45.2 in state proceedings that receive federal funding and oversight constitutes a separate

violation of Plaintiff's due process rights.

181.    Legal Precedent to Support This Claim

a. *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009) - The Supreme Court held that

due process requires judicial recusal when "the probability of actual bias on the part of

the judge is too high to be constitutionally tolerable."

b. *Williams v. Pennsylvania*, 136 S. Ct. 1899 (2016) - The Court held that it violated due

process when a judge participated in a case in which he had significant personal

involvement as a prosecutor.

c. *Liteky v. United States*, 510 U.S. 540 (1994) - The Court discussed when judicial bias

requires recusal, including instances where extrajudicial sources create appearance of

partiality.

d. *United States v. Heldt*, 668 F.2d 1238 (D.C. Cir. 1981) - Interpreting earlier versions of

DOJ conflict of interest regulations (precursors to 28 C.F.R. § 45.2) and discussing their importance to fair proceedings.

e.  *In re Murchison*, 349 U.S. 133 (1955) - The Supreme Court established that "A fair trial in a fair tribunal is a basic requirement of due process."

## XIII. REQUEST FOR EXPEDITED CONSIDERATION

182.  Plaintiff implores this Court to expedite consideration of this emergency motion, as the federal judiciary represents her final hope to end a years-long constitutional nightmare. The unlawful detention of G.L.Stephens, severed from her fit biological mother by void orders and placed with a documented child abuser, inflicts daily irreparable harm—psychological trauma, parental alienation, and exposure to documented risks of abuse.

183.  The placement of G.L.Stephens with Adam Sylvester Stephens, who has substantiated cases of child abuse in Oregon and Oklahoma (as documented by whistleblower Maria Chico before the evidence was deliberately truncated from official reports), creates an immediate and ongoing risk of serious harm that demands immediate judicial intervention.

184.  Under FRCP 65(b) and Local Civil Rule 7.2(e), ex parte emergency relief is justified, as notice risks further retaliation, as evidenced by prior obstructions. Plaintiff requests a preliminary injunction hearing within fourteen (14) days, as the public interest in constitutional fidelity and the protection of a child's welfare demands swift action. *Troxel*, 530 U.S. at 65-66.

185.  The need for expedited consideration is further supported by the United States Supreme Court's recognition in ***Golan v. Saada*, 596 U.S. ___ (2022), that "timely resolution... is important" in cases involving child custody and safety**. The Court emphasized that "expedition will help minimize the extent to which uncertainty adds to the challenges

confronting both parents and child." In cases involving substantiated risk of abuse, as here, <u>the need for expeditious resolution is even more pressing to prevent ongoing harm to the child</u>. The documented history of child abuse by Defedant Adam Sylvester Stephens presents precisely the type of grave risk that justifies immediate judicial intervention without further delay for consideration of lesser measures that would leave G.L.Stephens in a dangerous placement.

## XIV. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Honorable Court grant the following emergency and permanent relief necessary to redress the continuing constitutional violations and irreparable harm set forth above:

1. Issue a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, 28 U.S.C. § 1651, and 12 O.S. § 1331, immediately ordering the release of G.L.Stephens from the unlawful custody of Adam Sylvester Stephens and restoring physical and legal custody to Plaintiff, her biological and legal mother, on the grounds that the custody orders by STATE OF OKLAHOMA are all void ab initio for want of jurisdiction, due process, and lawful adjudication;

2. **Declare that all custody, child support order, contempt order, child support enforcement orders pertaining to G.L.Stephens are constitutionally void, and were procured through extrinsic fraud, sealed and falsified documents, and without lawful jurisdiction, in violation of the First, Fourth, and Fourteenth Amendments;**

3. Enter a **Permanent Restraining Order (PRO)** under FRCP 65(b), enjoining all Defendants from enforcing or relying upon any orders pertaining to the custody and related matters of G.L.Stephens during the pendency of this federal action, to prevent further irreparable harm to Plaintiff and G.L.Stephens;

4. Enter a Preliminary and Permanent Injunction, permanently prohibiting Defendants from:

   o  Enforcing or recognizing the void custody orders at issue;

   o  Interfering with Plaintiff's federally protected rights of custody, familial association, or access to her female offspring's medical, educational, or legal records;

   o  Retaliating against Plaintiff for engaging in protected federal advocacy;

   o  Concealing evidence of Adam Sylvester Stephens' history of child abuse;

5. Declare that Defendants engaged in a civil conspiracy under 42 U.S.C. § 1985(3) to obstruct justice, retaliate against Plaintiff, and deprive her and her female offspring of constitutionally protected rights;

6. Order the immediate disclosure of all unaltered reports documenting Adam Sylvester Stephens' history of child abuse, including the original reports by OKDHS whistleblower Maria Chico before they were truncated by OKDHS supervisors;

7. Grant full declaratory relief under 28 U.S.C. §§ 2201-2202, affirming that:

   o  All judicial orders pertaining to G.L.Stephens are void;

   o  Plaintiff retains full and exclusive legal and physical custody of G.L.Stephens;

   o  Ongoing enforcement of the challenged orders constitutes a continuing constitutional violation;

   o  The placement of G.L.Stephens with Adam Sylvester Stephens, a known child abuser, constitutes deliberate indifference to her safety and welfare;

8. Recognition that the actions of the Defendants have violated Plaintiff's constitutional rights and caused irreparable harm;

9. Award costs of litigation, including reasonable attorney fees, as applicable under 42 U.S.C. § 1988;

10. This superior Court to provide written statements of fact and conclusions of law, rather than any abusive discretion for appeal purposes if justice, truth, and the constitutional of united states of America is not revered in this court;

11. Grant equitable relief to ensure Plaintiff's participation in all hearings by remote access, pursuant to her rights under applicable law and in recognition of any hardship circumstances;

12. Grant such other and further relief as this Court deems just, necessary, and proper to redress the ongoing constitutional, statutory, and human rights violations detailed herein, and to restore the integrity of federal judicial review over state misconduct of this magnitude.

## XV. DEMAND FOR JURY TRIAL

Pursuant to FRCP 38, Plaintiff hereby demands a trial by jury on all issues so triable in this action, including but not limited to the claims brought under 42 U.S.C. §§ 1983 and 1985(3).

a. Plaintiff demands **written "findings of fact and conclusions of law"** in every Court Order.

b. Plaintiff operates under the presumption that this honorable court maintains his/her oath to the Divine Creator YAHUAH that he/she took:

"We hold these truths to be self-evident, that all men [meaning man and woman] are created equal, that they are endowed by their Creator with certain unalienable Rights, that among these are Life, Liberty and the pursuit of Happiness.--That to secure these rights, Governments are instituted among Men, deriving their just powers from the consent of the governed, --That whenever any Form of Government becomes destructive of these ends, it is the Right of the People to alter or to abolish it, and to institute new Government, laying its foundation on such principles and organizing its powers in such form, as to them shall seem most likely to effect their Safety and Happiness."--**The unanimous Declaration of the thirteen united States of America, circa 1776**.

"I, [your family name here and your en legis name here both] do solemnly swear (or affirm) that i will support, **obey**, and **defend** the **Constitution of the United States**, and the Constitution of the State of Oklahoma..."--**Oath of Office** required for all governmental officials and all U.S. citizens.

**Please take Notice that** this is sent to you in the peace and love of Messiah Yashua. Luke 11:52.
## AVOUCHMENT / VERIFICATION
    i hereby declare, verify, certify and affirm, pursuant to the penalties of perjury under the laws of the united states of America, and by the provision of 28 U.S. Code § 1746 that i am of

sound mind and competent to make this verification, and that all of the above and foregoing representations are true and correct to the best of my knowledge, information, belief.

Executed in Charleston County, republic land of South Carolina on this 04th day of June in the Year of Our Lord Two Thousand and Twenty Five.

*Nemo me impune lacessit pursuant to Psalm 105:15 + Isaiah 54:17*
PRIVATE; THIS IS NOT A PUBLIC COMMUNICATION
**Silence is Tacit Acquiescence/Agreement/Dishonor**;
*This communication is in no way forming a contract nor requesting any contracting; it is simply a notice regarding the matters at hand. This communication is not intended to nor does it create nor confirm any professional-client relationship or any type of relationship between us;*

Private sector autograph;
**WITHOUT RECOURSE**

*without prejudice*
*linh-tran: stephens/Agent*

By one–and–only beneficiary: _____

All Rights Reserved None Waived, **Without Prejudice** *UCC 1-308 & 1-103*,
**Non-Assumpsit**, one-and-only Grantor & Authorized Agent & Beneficiary
for LINH TRAN STEPHENS©® ens legis and all its derivatives thereof including Cestui Que Trust a.k.a. "Fide Commissary Trust",
sui juris, Ambassador of Messiah Yahusha, Heir of the Creator, my heir/offspring is G.L.Stephens;
A natural living woman breathing with a living soul and the Holy Spirit of Creator YAHUAH, natural people with hands legs, Alive-on-the-land, Plenary mind body soul/spirit, unlimited, non-incorporated, non-sole-proprietor,
**stateless "freeman of the Union"** per Honorable Mr. Justice MILLER on April 14th, 1983, in the Slaughter-House cases, 83 US 36 (a SCOTUS case specifically mentioned in 8 FAM 102.3), full capacity and competency with postgraduate level of education,
living on the land of the republic, with God-given rights pursuant to Bills of Rights, NOT a "pro se"/"person"/"pauper"/"indigent"/"slave"/"public servant"/"government employee"/"ward of State"/"U.S. citizen"/"minor" in your dictionary; i reject your 12 legal presumptions, other presumptions/assumptions/double-speaking/implied or undisclosed contracts;
Article IV Section 2 Citizens of each State shall be entitled to all Privileges & Immunities of Citizens in several States;
**Rural Free Delivery, Non-Domestic 00000,**
℅ 1964 Ashley River Rd Ste B Unit 80112,
Charleston, South Carolina [zip exempt,near 29407] without U.S. Washington, D.C.
Email: LinhStephens7@gmail.com
Tel: 817-631-3223

**Notary as JURAT CERTIFICATE**

STATE OF MINNESOTA            )
                             ) *ss*
COUNTY OF SHERBURNE )

On this 05th day of June, 2025 before me, Melissa K. Vagle, a Notary Public, personally appeared a living woman Linh Tran Stephens ( the Authorized Representative and Beneficiary for Legal Fiction LINH TRAN STEPHENS©® ), who electronically (remotely) proved to me on the basis satisfactory evidence to be the woman whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her autograph(s) on the instrument the woman executed, the instrument.

i certify under PENALTY OF PERJURY under the lawful laws of Minnesota State and that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

*Melissa K. Vagle*

Signature of Notary/Jurat

MELISSA K VAGLE
Notary Public
State of Minnesota
My Commission Expires
January 31, 2028

Notary Public's Commission Expires: 01/31/2028

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on the <u>06th</u> day of <u>June</u>, 2025, a true, correct, and exact copy of the above and foregoing instrument was filed face-to-face with Court Clerk at <u>United States District Court Northern District of Oklahoma, 333 W 4th St, Suite 411,Tulsa, OK 74103 with $5 fees donated by ADA advocate</u>; previously efiling and In Forma Pauperis (IFP) were approved on 02/01/2024 in another case 24-CV-216-JDR-CDL, thus Court Clerk to issue summons for the following defendants

1.  ***Defendants # 1, 8, 13, and all defendants except # 16 :***
Oklahoma Attorney General Gentner Drummond for STATE OF OKLAHOMA and all its
employees/successors
313 NE 21st Street
Oklahoma City, OK 73105
2.  ***Defendants # 2, 3, 7, 10, 11, 17***
**Oklahoma Department of Human Services and its divisions CPS and CSS**, Director Jerrey Cartmell
and Deborah Shropshire, Bridget O'brien,
2400 N. Lincoln Blvd.
Oklahoma City, OK 73105
3.  ***Defendant # 11***
Child Support Services (CSS)
PO Box 248822
Oklahoma City, OK 73124
4.  ***Defendant # 12, 4, 5, 6***
**Tulsa County District Court and all its divisions**:
ATTN: Clerk's Office, Presiding Judge, and Board of County Commissioners, Judges of docket C April
Seibert, Rodney Sparkman, Todd Chesbro,
500 S. Denver Avenue
Tulsa, OK 74103
5.  ***Defendant # 14***
Service of Process Division, **Oklahoma Secretary of State**
2300 N Lincoln Blvd, Suite 101
Oklahoma City, OK 73105-4897
6.  ***Defendant # 9, 15***
Office of the Governor, ATTN: J. Kevin Stitt
Oklahoma State Capitol
2300 N. Lincoln Blvd., Suite 212
Oklahoma City, OK 73105
7.  ***Defendant # 16***
Adam Sylvester Stephens (<u>return address to ADA advocate Carol who serviced Adam</u>)
7508 Ross Rd, Apt 5303, Del Valle, TX 78617
8.  <u>CC:</u>**The Board of County Commissioners**
Tulsa County Headquarters
218 W. 6th St.,
Tulsa, OK 74119-1004

Signature    *without prejudice*
*link–tran: stephens/Agent*